In re Donald SMITH, Sidney Harac and Barbara J. Harac, Minnie J. Pearson, Juan A. Chin, Guadalupe Castillo and Josephine Castillo, Debtors.

Bankruptcy Nos. 01–53017–LMC, 01–55872–RBK, 01–55873–LMC, 01–55883–RBK, 01–56002–LMC.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Dec. 20, 2002.

Paul W. Rosenbaum, San Antonio, TX, for Debtors.

Marion A. Olson, Jr., San Antonio, TX, Chapter 13 Trustee.

## OPINION

RONALD B. KING, Bankruptcy Judge and LEIF M. CLARK, Bankruptcy Judge.

All of the above-referenced Debtors (collectively, "Debtors"), filed Chapter 13 cases in 2001. The Chapter 13 Trustee, Marion A. Olson, Jr. ("Trustee"), filed an Objection to Confirmation in each of these Chapter 13 cases, except in one case where a creditor filed the objection. The Trustee objected to a supplemental plan provision in the Debtors' Chapter 13 Plans which requires undersecured creditors whose debts are secured by personal property to release their liens before the unsecured portion of their debt has been paid. The release of the lien would be *before* payment of the creditor's remaining unsecured claim, *before* completion of the Chapter 13 case, and *before* receipt of a discharge.

■ The cases are divided on this issue. A majority of courts has ruled in favor of the position asserted by the Trustee in this case, which is usually asserted by secured creditors. *See In re Thompson,* 224 B.R. 360 (Bankr.N.D.Tex.1998); *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995). A minority of courts, however, has adopted the position of the debtors, relying upon their interpretation of sections 506(a), 506(d), and 1322(b), and 1325(a)(5)(B) of the Bankruptcy Code.[1] *See In re Townsend,* 256 B.R. 881 (Bankr.N.D.Ill.2001); *In re Shorter,* 237 B.R. 443 (Bankr.N.D.Ill.1999); *In re Johnson,* 213 B.R. 552 (Bankr. N.D.Ill.1997); *Bank One, Chicago, NA v. Flowers,* 183 B.R. 509 (N.D.Ill.1995). This Court adopts the position of the majority of courts, but for slightly different reasons.

A secured creditor should not be compelled to release its security interest without payment of the debt in full, prior to the completion of the debtor's plan and the granting of a discharge.

Section 506 of the Code substantially affects the rights of secured creditors in a bankruptcy case. Under state law, a secured creditor is entitled to retain its security interest in collateral until the debt is paid in full, even if the value of the collateral is less than the debt owed. The secured creditor is not forced to bifurcate its debt under state law unless the creditor forecloses upon its security interest. At that point, the debt is partially or fully satisfied by the sale of the collateral, leaving the creditor with an unsecured claim for any deficiency. Bankruptcy uses a legal fiction to assume that a foreclosure has taken place, assigns a value to the collateral at that point in time, and splits the creditor's claim into a secured portion equal to the collateral value and an unsecured portion equal to the deficiency, if any. By this legal fiction, the Code replicates foreclosure without an actual sale of the collateral.

Section 506 creates this legal fiction in two ways. First, section 506(a) defines "allowed secured claim" as a claim equal to the value of the collateral. Second, section 506(d) limits the lien of the secured creditor to the value of the collateral. *See In re Scheierl,* 176 B.R. at 503. The effect is to significantly alter the state law entitlements of the secured creditor by depriving the creditor of the right to use its lien for its "hostage value" to enforce payment of the whole indebtedness. Once the "allowed secured claim" is satisfied by the bankruptcy process, the creditor may not use the lien to force payment of its unse-

---

1. 11 U.S.C. §§ 101–1330 (2000 & Supp.2002)   (referred to herein as the Bankruptcy Code).

cured deficiency claim. In addition, section 506(d) is both automatic and self-effectuating. The lien no longer secures the creditor's entire claim, as it would under state law. It secures only the "allowed secured claim," and is voided "[t]o the extent that [it] secures a claim . . . that is *not* an allowed secured claim . . . ." 11 U.S.C. § 506(d) (emphasis added).

Section 506 operates in slightly different ways depending upon the chapter in which it is used. In a Chapter 7 case, for example, its role is limited because liquidation involves little more than either selling, abandoning, or surrendering the collateral of a secured creditor. If the collateral is sold, the secured creditor's claim will equal the proceeds of the sale, up to the amount of debt owed to the secured creditor. If the collateral is not sold, then it must be disposed of by allowing a secured creditor to foreclose upon its security interest; by abandoning the property to the debtor; or by otherwise disposing of the property pursuant to section 725. None of these options requires the trustee to seek a valuation of the collateral in order to bifurcate the secured creditor's claim. Indeed, if the property is abandoned back to the debtor, bifurcation is neither necessary nor appropriate, because no bankruptcy purpose is served. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

In contrast, section 506 plays a significant role in Chapter 11 cases because the debtor often keeps the collateral under a plan of reorganization. The secured creditor's claim must, therefore, be bifurcated and the lien restricted to secure only the allowed secured portion of the bifurcated claim. The unsecured portion of the claim, by virtue of section 506(d), is treated as totally unsecured, even to the point of being classified with ordinary trade claims which were never secured. *See, e.g., In re*

*Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir.1991).

In Chapter 11, the split of an undersecured claim into two claims occurs *with finality* when the court confirms a plan of reorganization. In a cramdown situation, the court must determine whether the proposed treatment has a present value equal to the allowed amount of the secured claim *as of the effective date of the plan. See* 11 U.S.C. § 1129(b)(2)(A)(i)(II). At that point, the lien retained by the creditor at confirmation secures only the allowed secured claim, rather than the entire claim. *See* 11 U.S.C. §§ 506(a), (d), 1129(b)(2)(A)(i)(I). In a Chapter 11 case, provisions assure that once the allowed secured claim has been satisfied in accordance with the plan, the creditor *must* release its lien, even if the creditor's unsecured deficiency claim remains unpaid. *See* 11 U.S.C. § 1142(b); *see also Harmon v. United States,* 101 F.3d 574 (8th Cir. 1996); *Fimberg v. F.D.I.C.,* 880 S.W.2d 83 (Tex.App.-Texarkana 1994, writ denied). Thus, after confirmation of a Chapter 11 plan, an undersecured creditor cannot use the hostage value of the lien to compel payment of its undersecured debt.

In Chapter 13, undersecured creditors, other than holders of home mortgages, are treated in much the same way as they would be in Chapter 11. Section 506 bifurcates the undersecured creditor's claim and limits the lien to the secured portion of the claim, thereby depriving the undersecured creditor of the right to use its lien for hostage value to enforce payment of the unsecured portion of the debt. *See In re Johnson,* 213 B.R. at 556 (allowing the creditor to retain a lien after the secured portion of the debt has been paid, in essence, secures the remaining unsecured portion of that debt, and so is impermissible); *see also In re Townsend,* 256 B.R. at 884; *In re Shorter,* 237 B.R. at

446; *In re Flowers*, 183 B.R. at 516–17. Section 1325(a)(5)(B) mirrors section 1129(b)(2)(A)(i), permitting the creditor to retain a lien to secure the allowed secured claim and paying the creditor the value of the collateral. Section 1327 is similar to section 1141 in that the plan binds all creditors and vests all property of the estate in the debtor upon confirmation, free and clear of all liens, except as provided in the plan. Thus, the creditor's lien *as of confirmation*, extends no further than its collateral, and secures no more than the allowed secured claim created by section 506(a).

What is *different* in Chapter 13, however, is that the debtor's discharge is delayed until the debtor completes the plan. 11 U.S.C. § 1328(a). Indeed, most of the benefits of the Chapter 13 process are deferred until completion of the debtor's plan. If the debtor is unable to complete the plan, three options are presented. First, the debtor can seek a hardship discharge requiring a showing that the failure to perform "is due to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1). Second, the debtor could elect to convert the case to another chapter, in which case the debtor would have to comply with the requirements of that new chapter. If the conversion were to Chapter 7, then *Dewsnup* would prevent the debtor from bifurcating an undersecured creditor's claim on property that the debtor intends to keep unless the debtor redeems the property under section 722. The debtor's third and final choice is dismissal of the case, in which bifurcation would be unavailable. *See* 11 U.S.C. § 349(b)(1) ("dismissal of a case ... reinstates ... any lien voided under section 506(d)"). Section 506(d) is self-effectuating and applies to all undersecured claims. Dismissal of the case restores the creditor's state law rights as they existed prior to bankruptcy.

Thus, unless the debtor completes the plan, the debtor cannot be certain that he or she will receive the benefits of Chapter 13.

If a Chapter 13 debtor obtains a clear certificate of title upon satisfaction of only the allowed secured claim of a creditor, the debtor has received benefits to which it is not entitled in the event that the case is later converted or dismissed. A certificate of title evidences the secured creditor's lien under state law. Even with proper perfection on the certificate of title, the secured creditor is still bound by the plan. The undersecured creditor desiring to enforce payment of its unsecured deficiency claim cannot file a motion for relief from stay, claiming a lack of adequate protection, because section 506(d) voids the lien to the extent that it would otherwise secure payment of that portion of the debt. The undersecured creditor's remedies with respect to its unsecured deficiency claim would be limited to motions to dismiss or convert the case.

Because there is no legal effect to the undersecured creditor's retaining its lien, the debtors argue that the lien *must* therefore be released. The argument is just as strong that there is no need for the lien to be released until the case has reached the point at which the effect of section 506(d) can no longer be undone. That point does not occur until the debtor completes the plan and receives a discharge. Once the debtor completes the plan and receives a discharge, the positions of the debtor and the undersecured creditor mirror that of a Chapter 11 case with a confirmed plan. Only at that point does the debtor have a discharge, which makes the effects of confirmation permanent for state law purposes.

A number of cases agree that the debtor cannot require a release of the lien from

the allowed secured claim holder before the debtor completes the plan payments and receives a discharge.[2] In *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn. 1995), Judge Gregory F. Kishel described a Chapter 13 plan as a "new contract" between the debtor and the creditors:

> Like any contract, this one embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts, and various ancillary remedies .... [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.

*In re Scheierl,* 176 B.R. at 504. *Scheierl* acknowledged that the Bankruptcy Code and Rules do not explicitly articulate this "contract" principle, but found additional support in the Bankruptcy Code provisions previously discussed herein. In section 1307(b), the debtor has a right to obtain dismissal of a case as long as the case has not been converted under sections 706, 1112, or 1208. 11 U.S.C. § 1307(b). Once the debtor requests dismissal of the case, section 349(b) restores the pre-petition *status quo* as it relates to the debtor's property rights and the creditor's claims against those property rights. *See* 11 U.S.C. § 349(b). "[These provisions] certainly mean that a Chapter 13 case cannot bring about any permanent reordering of property and contract rights, partial or comprehensive, until the debtor meets a

threshold requirement: entitlement to a discharge, by 'complet[ing] ... all payments under the plan' pursuant to 11 U.S.C. § 1328(a)." *In re Scheierl,* 176 B.R. at 505.

*Scheierl* noted at the outset that the issue before that court was not whether lien-stripping is permitted in Chapter 13. What the court faced was simply whether, as a matter of law, a debtor could force release of the certificate of title upon payment of the allowed secured claim. In order to protect the secured creditor from the problems associated with dismissing a case after a release of a lien on personal property, the lien should remain with the secured creditor until completion of the Chapter 13 plan payments and the granting of a discharge. "If the debtor wishes to sell, trade, or discard collateral before the completion of the plan, he should bear the onus of bringing on a motion for leave to do so under the color of 11 U.S.C. §§ 363(b)(1) and 363(e)." *In re Scheierl,* 176 B.R. at 507.

### Conclusion

For the reasons stated above, the Debtors' Plans will be confirmed, conditioned upon removal of the Plan provision which purported to require release of a secured creditor's lien after payment of only the secured portion of the claim. The liens will be released only after all Plan payments have been made in full and the Debtors have been discharged, upon full payment of the claims, or pursuant to further order of this Court. An Order will be entered contemporaneously herewith. This Opinion shall serve as this Court's Findings of Fact and Conclusions of Law

---

**2.** *See, e.g., In re Thompson,* 224 B.R. 360 (Bankr.N.D.Tex.1998); *In re Zakowski,* 213 B.R. 1003 (Bankr.E.D.Wis.1997); *In re Pruitt,* 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Gibbons,* 164 B.R. 207 (Bankr.D.N.H.1993); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich. 1993).

pursuant to Bankruptcy Rules 7052 and 9014.