In re Chester L. KING and Mary B. King, Debtors.

No. 02–82692.

United States Bankruptcy Court, C.D. Illinois.

March 5, 2003.

Gregg W. Bittner, Peoria, IL, for debtor.

## *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

This matter is before the Court on a Motion to Modify the Automatic Stay filed by Bank One, Illinois, NA ("BANK ONE"), requesting modification of the automatic stay to foreclose its second mortgage on the homestead real estate owned by the Debtors, Chester L. King and Mary B. King ("DEBTORS"), because the mortgage is not being paid in the confirmed Chapter 13 plan. Since the Court agrees with the DEBTORS' contention that BANK ONE'S second mortgage was properly stripped off at confirmation, as wholly unsecured, the motion will be denied.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The DEBTORS filed a prior Chapter 13 case on February 26, 1999. They converted the case and thereafter received a Chapter 7 discharge on April 3, 2002. The DEBTORS then filed their joint Chapter

13 petition on June 12, 2002,[1] and valued their residence at 2218 W. Kettelle St., Peoria, Illinois, at $38,000. They scheduled the balance due Key Bank on its first mortgage at $40,000 and BANK ONE on its second mortgage at $48,000. The DEBTORS' personal liability on the note secured by BANK ONE'S mortgage was discharged in the prior bankruptcy case.

On the matrix of creditors filed by the DEBTORS, which contains the name and address of each creditor for notice purposes, they listed BANK ONE'S address as P.O. Box 626, Butler, WI 53007, the same address used on Schedule D. According to the DEBTORS, the address they used for BANK ONE was that contained on a delinquency notice they received from BANK ONE, dated April 24, 2001, concerning their mortgage account, a copy of which notice is attached to their Memorandum of Law. The notice, signed by a BANK ONE employee with the title "Bankruptcy Specialist," contains the following mailing address for BANK ONE:

Bank One, Wisconsin
Midwest Direct Collection Center
Mail Code WI1–4030
P.O. Box 626
Butler, WI 53007

On June 15, 2002, the Bankruptcy Noticing Center mailed to BANK ONE at that address, a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" as well as a copy of the Chapter 13 Plan filed by the DEBTORS. The plan proposed that the DEBTORS would cure the prepetition mortgage arrearage of $10,700 to Key Bank while maintaining regular postpetition payments on the first mortgage. As to BANK ONE, the plan proposed to void its second mortgage as entirely unsecured. The Notice states that the meeting of creditors was scheduled for July 15, 2002, at 12:30 p.m., followed by the confirmation hearing at 2:00 p.m. Immediately following, the Notice states:

Any party objecting to confirmation must appear at the confirmation hearing to have their objection considered. Objections to confirmation may be deemed waived if the objector does not appear. The filing of a proof of claim does not constitute an objection to confirmation. Unless an objection is raised at the confirmation hearing, the valuation of collateral provided in the plan will be binding upon secured creditors if the plan is confirmed.

Neither BANK ONE nor any other creditor appeared at the meeting of creditors or objected to confirmation of the plan, which was confirmed by Order entered July 16, 2002.

On July 22, BANK ONE filed its proof of claim in the amount of $53,618.56. In the proof of claim's space for listing the creditor's address, BANK ONE typed in the following:

Name and Address for Disbursements:

Bank One
National Payment Services
P.O. Box 182223
Columbus, OH 43218–2223

Forward Correspondence/Notices to:

Bank One, P.O. Box 626, Butler, WI 53007–0626
Attn: Bankruptcy Department

On October 15, 2002, a proof of claim was filed by Ingomar, LP, as servicing agent for Key Bank, stating a balance due on the first mortgage, as of the petition date, of $49,709.91.

On October 7, 2002, BANK ONE filed its Motion to Modify the Automatic Stay

---

1. The assertion in BANK ONE'S brief, that this case was filed by Chester L. King, individually, not jointly with his wife, Mary B. King, is incorrect.

alleging, incorrectly, that the confirmed plan provided for the postpetition mortgage payments to be paid directly to BANK ONE. The DEBTORS objected to the motion asserting that BANK ONE'S second mortgage had been stripped off at confirmation and that BANK ONE was properly treated as an unsecured creditor.

The Court held a preliminary hearing on the motion on November 4, 2002. The parties agreed that there was no issue of fact that would require an evidentiary hearing and that the matter could be decided on briefs. The Court set a briefing schedule and took the matter under advisement. Both parties filed a brief in support of their position.

In its brief, BANK ONE makes the following arguments:

1. BANK ONE did not receive adequate notice of the filing since the DEBTORS used a "payment mailing address" rather than the "correct administrative mailing address" for BANK ONE.

2. Even if BANK ONE is wholly unsecured, a strip-off of its mortgage is prohibited by the Supreme Court's opinion in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

3. Confirmation of the plan, by itself, is procedurally insufficient to effect a strip-off of a wholly unsecured junior mortgage; what is required is either an adversary proceeding or an evidentiary hearing on the value of the real estate.

4. The DEBTORS acted in bad faith by filing this Chapter 13 case shortly after receiving a discharge in a Chapter 7 case.

The Court will address each of these arguments in turn.

## ANALYSIS

### A. Adequacy of notice.

■■■ The Butler, Wisconsin, post office box address used by the DEBTORS is the same as that requested to be used by BANK ONE, in its proof of claim, for correspondence and notices. In light of that, BANK ONE'S argument that notice of the bankruptcy filing was sent to the wrong address can only be characterized as frivolous. Even if BANK ONE'S proof of claim requested that notices be sent to a different address, creditors are charged with adopting appropriate internal procedures to properly process bankruptcy notices, and a notice of filing mailed to a mortgagee's payment address is sufficient. *In re Mauck*, 287 B.R. 219 (Bankr.E.D.Mo. 2002).

### B. Strip-off of a wholly unsecured mortgage is permitted in Chapter 13.

■ One of the primary benefits to a debtor filing for bankruptcy relief under Chapter 13, is the ability to restructure secured debt by bifurcating, pursuant to Section 506(a), an undersecured claim into two, separate claims: a secured claim equal to the value of the collateral, and an unsecured claim in the amount of the deficiency balance. While the secured claim must be paid in full with interest, the unsecured claim is paid ratably with other unsecured creditors. In bankruptcy jargon, this bifurcation process is referred to as "strip-down" because the lien is stripped down to the value of the collateral. Where the collateral is fully encumbered by a prior lien so that no value is available to support a junior lienholder's secured claim, the entire debt is classified as unsecured. This is referred to as "strip-off" since the lien is entirely stripped off and eliminated.

Section 1322(b)(2) authorizes a Chapter 13 plan to "modify the rights of holders of

secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..." 11 U.S.C. § 1322(b)(2). In *Nobelman,* the Supreme Court held that Section 1322(b)(2) prohibits a debtor from stripping down an undersecured residential mortgage. As a result, where two mortgages encumber the residential real estate, as long as the value of the property exceeds the balance of the first mortgage by any amount, no matter how small, the second mortgage may not be stripped down and must be treated in the Chapter 13 plan as if it were fully secured. The Court was not faced with and did not address the issue of whether a wholly unsecured junior mortgage could be stripped off.

Since *Nobelman,* the issue of whether Section 1322(b)(2) precludes strip-off has been decided by a large number of courts. The Seventh Circuit has not yet decided the issue but each of the six Courts of Appeal that have, has held that a wholly unsecured mortgage may be stripped off in Chapter 13 notwithstanding Section 1322(b)(2) and *Nobelman. In re Pond,* 252 F.3d 122 (2nd Cir.2001); *In re McDonald,* 205 F.3d 606 (3rd Cir.2000), *cert. denied,* 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000); *In re Bartee,* 212 F.3d 277 (5th Cir.2000); *In re Lane,* 280 F.3d 663 (6th Cir.2002); *In re Zimmer,* 313 F.3d 1220 (9th Cir.2002); *In re Tanner,* 217 F.3d 1357 (11th Cir.2000).

Most lower courts within the Seventh Circuit agree that strip-off of a wholly unsecured mortgage is permissible. *In re Holloway,* 2001 WL 1249053 (N.D.Ill. Oct. 16, 2001) (Darrah, J.); *In re Waters,* 276 B.R. 879 (Bankr.N.D.Ill.2002) (Squires, J.);

*In re Havel,* 2002 WL 31944059 (Bankr. S.D.Ill. Aug. 15, 2002) (Fines, J.); *In re Black,* 2002 WL 31719957 (Bankr.N.D.Ind. Sept. 23, 2002) (Grant, J.). *Contra, In re Barnes,* 207 B.R. 588 (Bankr.N.D.Ill.1997) (Schmetterer, J.). The majority view is that a junior mortgagee is entitled to the non-modification benefit of Section 1322(b)(2) only if it holds a secured claim determined pursuant to Section 506(a). Where the value of the property is less than the amount of prior liens, the junior mortgage is entirely unsecured and the mortgagee is not the holder of a secured claim.

The Court is thoroughly familiar with the arguments on both sides of the issue. Having considered the competing positions, the Court is of the opinion that the majority position reflects the correct interpretation of Sections 1322(b)(2) and 506(a), and is consistent with the Supreme Court's reasoning in *Nobelman.* Since the arguments have been so thoroughly explored by other courts, there is no need for this Court to recite them here. Rather, because Judge Squires, in *Waters,* has so thoroughly and cogently analyzed the issue, the Court will merely adopt the reasoning set forth in *Waters* as its own. Accordingly, the Court holds that a Chapter 13 debtor may strip off a wholly unsecured residential mortgage lien and that such a strip-off is not prohibited by Section 1322(b)(2) or by *Nobelman.*[2]

### C. Strip-off may be accomplished as part of the plan confirmation process.

#### 1. Strip-off does not require an adversary proceeding.

█ In Sections I and III of its brief, BANK ONE argues that strip-off of a

---

**2.** BANK ONE raises several policy arguments against permitting strip-off. This Court's decision today, that strip-off is permissible as a matter of statutory construction, applies the intent of Congress reflected in the language of the Bankruptcy Code. Whether the policies behind the statute are wise, is a question for Congress.

wholly unsecured mortgage lien may only be accomplished through an adversary proceeding rather than through confirmation of a plan. Courts vary in their practices in this regard. *Compare In re Black,* 2002 WL 31719957 (Bankr.N.D.Ind.2002) (permitting strip-off of wholly unsecured mortgage through Chapter 13 confirmation process), *with In re Waters,* 276 B.R. 879 (Bankr.N.D.Ill.2002) (permitting strip-off of wholly unsecured mortgage lien in an adversary proceeding). BANK ONE cites no authority that holds that strip-off of a wholly unsecured mortgage may only be accomplished in an adversary proceeding.

BANK ONE correctly recognizes that deciding the limits of just how far a Chapter 13 plan may go in modifying a creditor's rights, before an adversary proceeding is necessary, is a question, on the one hand, of how the Federal Rules of Bankruptcy Procedure (hereinafter, "Bankruptcy Rules") define those issues that require an adversary proceeding and, on the other hand, of the adequacy of notice. Generally, disputes that arise in bankruptcy cases can be divided into three categories: (1) administrative matters, in which there is no adversary party, (2) contested matters, which are governed by Bankruptcy Rule 9014, and (3) adversary proceedings, as defined by Bankruptcy Rule 7001, which are governed by the rules of procedure in Part VII of the Bankruptcy Rules. 10 *Collier on Bankruptcy* ¶ 9014.01, p. 9014–2 (15th Ed. Rev.).

■ Where an objection to a Chapter 13 plan is asserted, the confirmation process is treated as a contested matter governed by Bankruptcy Rule 9014. F.R.B.P. 3015(f); *Matter of Dues,* 98 B.R. 434, 440

(Bankr.N.D.Ind.1989). Because the Chapter 13 plan confirmation process itself is a contested matter, however, does not mean that all issues may be resolved as contested matters merely because they are raised in a plan or an objection to a plan. As this Court has previously recognized, only those issues that are, themselves, classified as contested matters, are properly and finally determined by confirmation of a Chapter 13 plan. Those issues that must be raised by way of an adversary proceeding are not properly determined at confirmation, absent consent by both parties.[3] *See, In re Zimmerman,* 276 B.R. 598 (Bankr.C.D.Ill.2001) (*"Zimmerman I"*) and, upon reconsideration, *In re Zimmerman,* 276 B.R. 606 (Bankr.C.D.Ill.2001) (*"Zimmerman II"*) (together referred to as the *"Zimmerman* Opinions"). *Accord, In re Strong,* 203 B.R. 105, 114 (Bankr. N.D.Ill.1996).

■ BANK ONE argues that the determination of whether its second mortgage is wholly unsecured, and thereby subject to strip-off, falls within that class of issues that requires an adversary proceeding pursuant to Bankruptcy Rule 7001(2), which provides that adversary proceedings include:

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property...

F.R.B.P. 7001(2).

■ While acknowledging that the issue turns primarily on the value of the real estate, BANK ONE fails to identify which of the three categories of validity, priority or extent, includes that determination. In this Court's view, valuation is not included within any of those terms. This

**3.** Many courts hold to the contrary, that confirmation of a plan binds a creditor to the modification of its claim stated in the plan, even if the substance of the modification falls within the class of issues requiring an adversary proceeding. *E.g., In re Andersen,* 179 F.3d 1253 (10th Cir.1999). If that rule were followed here, BANK ONE'S motion would be denied based on the *res judicata* effect accorded by Section 1327(a) alone.

Court agrees with *Matter of Beard,* 112 B.R. 951 (Bankr.N.D.Ind.1990), that, as used in Bankruptcy Rule 7001(2), the term "validity" means the existence or legitimacy of the lien itself, "priority" means the lien's relationship to other claims to or interests in the collateral, and "extent" means the scope of the property encompassed by or subject to the lien. 112 B.R. at 955. *See, also, In re Hudson,* 260 B.R. 421, 433 (Bankr.W.D.Mich.2001). Here, the DEBTORS are not alleging that BANK ONE'S mortgage is invalid, there is no dispute that Key Bank's mortgage has first priority, and the DEBTORS are not disputing that BANK ONE'S mortgage encumbers their residential real estate and no other property.

■ Rather than basing avoidance on invalidity of the mortgage, or lack of priority or extent of the lien's scope, the DEBTORS' plan proposes to void BANK ONE'S lien via the secured claim determination and valuation process of Section 506(a), required to be made in conjunction with the hearing "on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Where the result of that claim determination process is that the creditor's claim is determined to be wholly unsecured, the creditor's lien is "void." 11 U.S.C. § 506(d). The determination of secured status based upon the value of the secured property is a contested matter by Bankruptcy Rule. F.R.B.P. 3012. *See, also,* 10 *Collier on Bankruptcy,* ¶ 7001.03[1] (15th Ed. Rev.). It follows directly that voiding a lien for lack of collateral value, pursuant to Section 506, is outside the scope of Bankruptcy Rule 7001(2) and is properly accomplished as part of the Chapter 13 plan confirmation process. *In re Hoskins,*

262 B.R. 693, 696–97 (Bankr.E.D.Mich. 2001); *Hudson, supra,* at 433; *In re Wolf,* 162 B.R. 98, 106 (Bankr.D.N.J.1993); *Beard, supra,* at 955–56.

■ As BANK ONE correctly points out, in order to determine whether a second mortgage is wholly unsecured, it is necessary to ascertain not only the value of the secured property, but the amount due on the first mortgage as well. The determination of the amount of a claim is also properly a contested matter, unless an objection to the claim includes a demand for relief otherwise covered by Bankruptcy Rule 7001, in which case only then does it become an adversary proceeding. *See,* F.R.B.P. 3007 and Advisory Committee Note thereto. *See, also, In re America's Shopping Channel, Inc.,* 110 B.R. 5 (Bankr.S.D.Cal.1990). Since both elements of the Section 506(a) bifurcation process, valuation and claim amount, are contested matters, that process is properly a part of the Chapter 13 plan confirmation process, and the statutory direction of Section 506(a), that such determination shall be made in conjunction with the hearing on the plan, is entirely consistent with Bankruptcy Rules 3007 and 3012.[4] This conclusion is also in accord with the decision of the District Court for the Central District of Illinois in *In re Whitlock,* No. 90–1372 (Aug. 27, 1991), discussed in *Zimmerman II,* 276 B.R. at 607–08, permitting the avoidance of an entirely unsecured lien via confirmation of a Chapter 13 plan.

## 2. The plan must include specific terms giving adequate notice of strip-off.

To hold that it is permissible for a Chapter 13 plan to strip off a wholly unsecured

---

**4.** For the purpose of the application of Section 506, there is no procedural distinction to be drawn between stripping down an undersecured lien to the value of the collateral, and stripping off and "voiding" a wholly unsecured lien. Both depend on the same inquiry into the value of the property and the amount of prior liens and both are routine aspects of Chapter 13 plans and the confirmation process.

junior mortgage lien without an adversary proceeding, however, is to answer only the first half of the question. The second half deals with the quality of notice that must be accorded the junior mortgagee in order to comport with principles of fundamental fairness and due process. The plan's strip-off provision is key. By way of comparison, in the *Zimmerman* Opinions, this Court addressed the following generic strip-off provision included in the Chapter 13 plan:

> Any creditor who is not specifically treated as secured in the plan shall be deemed to be an unsecured creditor, and upon confirmation any alleged lien that it claims shall be void. In the event a creditor listed as having a secured claim paid through the Plan fails to file a proof of claim its security interest shall be voided upon discharge (or if such claim was an arrearage claim it shall be considered cured in full) pursuant to 11 U.S.C. Sections 105 and 506.

*Zimmerman I*, 276 B.R. at 600–01. Holding the provision unenforceable, this Court concluded that lien-stripping may be accomplished through the Chapter 13 confirmation process, only where the basis is lack of collateral value, and only if the creditor is "provided for by the plan" under Section 1327. What is required to adequately "provide for" the lienholder is a function of due process.

As set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to comport with due process requirements, notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination, i.e., the extent of the adverse effect on the party's rights (the qualitative aspect), and it must afford a reasonable time in which to respond (the quantitative aspect). The quantitative "reasonable time to respond"

requirement is incorporated into the Chapter 13 confirmation process through Bankruptcy Rule 2002(b)(2), which requires at least 25 days notice of the hearing to consider confirmation of a Chapter 13 plan. That minimum notice period was satisfied in the case at bar.

■ Whether *Mullane's* qualitative notice component is satisfied, depends upon the specificity of the plan provision in question. In *Zimmerman I*, this Court summarized what is required, as follows:

> To "provide for" a creditor in a Chapter 13 plan, for purposes of Section 1327(c), the plan must, at a minimum, clearly and accurately characterize the creditor's claim in the plan. *In re Deutchman*, 192 F.3d 457 (4th Cir.1999); *Cen–Pen Corp. v. Hanson, supra* at 94 (A plan "provides for" a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment). Ordinarily, this requires the creditor to be identified by name. *In re Burgess*, 163 B.R. 726 (Bankr. M.D.Pa.1993). *See, also, In re Holloway*, 261 B.R. 490 (M.D.Ala.2001) (holding, in a Chapter 12 case, that a creditor's secured lien must be acknowledged as a secured lien in order for that creditor to be "provided for" in the plan).

> \*   \*   \*   \*   \*   \*

> In addition to identifying the creditor and its claim, a plan that seeks to eliminate a lien for lack of collateral value should give the creditor some explanatory detail, e.g., that the collateral is destroyed or is worthless or is fully encumbered by a senior lien. *In re Fuller*, 255 B.R. 300, 306–07 (Bankr.W.D.Mich. 2000); *In re Beard, supra,* n. 1; *In re Rogers,* 57 B.R. 170, 172 (Bankr. E.D.Tenn.1986).

> In summary, a creditor's lien may be avoided through confirmation of a Chap-

ter 13 plan where the basis is lack of collateral value and where the plan properly "provides for" the creditor through language sufficiently specific to put the affected creditor on notice that its lien will be lost if an objection to the plan is not made. The burden is squarely on the shoulders of the debtor, as the drafter of the plan, to ensure that the language of the plan provides adequate notice of the debtor's intentions and the basis for the proposed lien avoidance. If the basis for avoidance is improper or if notice to the creditor is inadequate, the secured property will still vest in the debtor upon confirmation, as provided by Section 1327(b), but will remain subject to the unavoided lien rather than vesting "free and clear" as permitted by Section 1327(c).

276 B.R. at 603.

■ Applying those standards here, this Court concludes that the plan's strip-off provision satisfies those requirements. The plan provides as follows:

> The account (loan number 401–898–38–0000–695060) held by Bank One is unsecured pursuant to Bankruptcy Code Section 506 as there is no equity in the Debtors' home beyond the first mortgage since the value of the real property is less than the balance of the first mortgage. Any mortgage and/or lien claimed or recorded by said creditor by virtue of said loan against the Debtors' property, including the property located at 2218 W. Kettelle St., Peoria, Illinois, is hereby voided and this account shall

be treated as unsecured in this and future proceedings.

The plan provision names BANK ONE, identifies the mortgaged real estate, expressly proposes to void BANK ONE'S mortgage on that real estate and treat BANK ONE'S claim as unsecured, and states as the basis for avoidance a lack of equity in that the first mortgage balance exceeds the property's value.

BANK ONE complains that the plan does not state the amount of the first mortgage balance or the specific value of the real estate. Although those figures would provide additional information in support of the DEBTORS' intention, their absence does not dilute the clarity of notice provided by the plan language that unequivocally expresses an intent to void BANK ONE'S mortgage lien as wholly unsecured. Just how far undersecured the DEBTORS allege the first mortgage lien to be is simply not pertinent to whether the plan gives adequate notice to BANK ONE of the proposed intent to strip off its second mortgage. That intent is plainly stated and the evidentiary basis supporting it is not required for notice purposes.

Likewise, BANK ONE'S contention that no evidence was presented by the DEBTORS at the confirmation hearing is beside the point. Had BANK ONE objected, a hearing would have been scheduled to take evidence.[5] But BANK ONE failed to object to confirmation. The issue here is whether the plan language is specific enough to permit strip-off in the absence of an objection and without a hearing.

---

5. No bankruptcy court takes evidence at an uncontested confirmation hearing. Many courts do not even hold a confirmation hearing if no objection is asserted. This Court requires objectors to appear and assert their objection at the confirmation hearing. If the objection raises a question of fact, an evidentiary hearing is scheduled to give the parties time to obtain the necessary evidence. There

is simply no credible argument to be made that bankruptcy courts must hold an evidentiary hearing where no one is objecting to confirmation. *See, Matter of Pence,* 905 F.2d 1107 (7th Cir.1990) (creditor could not challenge Chapter 13 plan's valuation of collateral post-confirmation, where plan was confirmed without objection). *See, also, Matter of Dues,* 98 B.R. 434 (Bankr.N.D.Ind.1989).

This Court holds that it is. Since the plan provided for the strip-off of BANK ONE'S second mortgage with sufficient specificity to comport with due process concerns, BANK ONE is bound by the provisions of the confirmed plan pursuant to Section 1327(a). *See, Matter of Chappell,* 984 F.2d 775, 782 (7th Cir.1993) (failure to raise objection at confirmation hearing precludes subsequent attack on confirmed Chapter 13 plan).

### D. BANK ONE waived any objection based on lack of good faith.

▇▇▇▇▇ BANK ONE also questions the propriety of this Chapter 13 case, given the prior discharge by the DEBTORS of BANK ONE'S mortgage note. This is a good faith issue. The obligation of good faith is imposed on the debtor at two stages in a Chapter 13 case. First, the debtor must file his petition in good faith and, second, the debtor must file his plan in good faith.[6] *In re Smith,* 286 F.3d 461 (7th Cir.2002). Objections based upon allegations of lack of good faith, however, must be raised at or prior to confirmation, and, if not, are waived. *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983). Issues resolved by confirmation are not thereafter subject to collateral attack by a creditor that had notice of the proceeding but failed to object to confirmation. *Matter of Pence,* 905 F.2d 1107 (7th Cir.1990). After confirmation, a creditor's remedy is limited to filing an adversary proceeding for revocation of the confirmation order pursuant to 11 U.S.C. § 1330. By not objecting to the plan or otherwise raising the issue prior to confirmation, BANK ONE waived the issue of lack of good faith.

### E. Conclusion.

For these reasons, the Court concludes that BANK ONE'S second mortgage was properly voided at confirmation and its claim is properly treated as unsecured. Therefore, BANK ONE has failed to establish cause to have the automatic stay modified to permit it to foreclose its mortgage and its motion should be denied.

Consistent with its past practice, this Court also holds that the lien-avoiding effect of the confirmed plan, while established at confirmation, is contingent upon a discharge pursuant to Section 1328. *Accord, In re Stroud,* 219 B.R. 388, 390 (Bankr.M.D.N.C.1997); *In re Leverett,* 145 B.R. 709, 713 (Bankr.W.D.Okla.1992). BANK ONE has no duty to release its mortgage until then. If, for any reason, the DEBTORS do not receive a discharge under Section 1328, BANK ONE'S mortgage lien remains in effect.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### *ORDER*

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the Motion to Modify Automatic Stay filed by BANK ONE, ILLINOIS, NA, should be and hereby is DENIED.

---

**6.** Serial filings under Chapter 7 and Chapter 13 are not *per se* evidence of bad faith. *In re Gier,* 986 F.2d 1326 (10th Cir.1993). *See, also, Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (debtors may include mortgage lien in Chapter 13 plan despite discharge of personal liability on mortgage note in prior Chapter 7 case).