**In re Daniel and Roberta FENN, Debtors.**

**No. 09 B 49343.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 17, 2010.

**496**

Ariane Holtschlag, Grochocinski, Grochocinski & Lloyd, Ltd., Orland Park, IL, for Debtors.

### ORDER ON WELLS FARGO'S OBJECTION TO CONFIRMATION

JACQUELINE P. COX, Bankruptcy Judge.

Before the court for ruling is Wells Fargo Bank, N.A.'s (Wells Fargo) March 18, 2010 Objection to Confirmation of the Plan of Daniel and Roberta Fenn ("Debtors") and the Debtors' April 12, 2010 Motion for Valuation of Security. In both its Objection and its May 6, 2010 Response to the Motion for Valuation, Wells Fargo objects to the Debtors' effort to avoid its wholly unsecured junior lien. For the reasons that follow, the Objection is sustained. The court finds that the Debtors may not avoid Wells Fargo's wholly unsecured junior lien for two reasons: the Debtors are not eligible for a discharge and their Amended April 12, 2010 plan ("plan") does not include the appropriate lien retention language.

### I. JURISDICTION

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the District Court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A)(K) and (L).

### II. FACTS

The Debtors have two properties. One is a home at 4440 West 179th Street in Country Club Hills, Illinois. It has two mortgages which secure notes held by Wells Fargo. The second home is located at 22608 Clarendon Avenue, Richton Park, Illinois. The mortgage on it is held by Chase Home Finance LLC ("Chase").

The Debtors filed a plan herein on December 30, 2009. The Debtors filed an Amended Plan on April 12, 2010. *See* Case No. 09 B 49343, Docket No. 29. That plan proposes to make current postpetition mortgage payments on the Chase mortgage on the Richton Park property of $1450 a month and $720 a month on the senior Wells Fargo mortgage on the Country Club Hills property. The plan refers to the Country Club Hills property as investment property; however, when it was purchased it was the Debtors' residence. *See* Response to Wells Fargo's Objection to Confirmation, 09 B 49343, Docket No. 24, page 1. The Debtors seek to pay $2600 in arrears on the Richton Park property during the term of the plan.

The Special Terms section of the plan provides that pursuant to Bankruptcy Code section 506, Wells Fargo's wholly unsecured junior mortgage on the Country Club Hills property, whether by separate court order or by the confirmation order, is void. (That section also provides that the proceeds of a personal injury claim, beyond the exempted amount, shall be turned over to the trustee and that the Debtors are not entitled to a discharge).

## III. DISCUSSION

 Regarding the Country Club Hills property, the Debtors argue that the senior Wells Fargo mortgage has a balance due of $103,403, that the junior Wells Fargo mortgage has a balance due of $50,000 and that the property is worth $60,915. Wells Fargo's Proof of Claim indicates a property value of $ 83,700. Whether the value of the collateral is $ 60,915 (as asserted by the Debtors) or $ 83,700 (as asserted by Wells Fargo), the $103,403 amount due on the first mortgage exceeds the value of the collateral, leaving the junior lien uncovered by any collateral value. On April 12, 2010 the Debtors filed a Motion for Valuation of Security asking that the court declare Wells Fargo's junior mortgage to be void. *See* 09 B 49343, Docket No. 30.[1]

### 11 U.S.C. § 1322(b)(2)

Wells Fargo objects to the voiding of its junior mortgage. It contends that Bankruptcy Code ("Code") § 1322(b)(2) prohibits modification of the rights of holders of secured claims on real property that is a debtor's principal residence and that in any event the Debtors can not modify its secured debt because they are not eligible for a chapter 13 discharge under 11 U.S.C. § 1328(f).

Section 1322(b)(2) of the Code provides that a chapter 13 plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Section 1328(f) of the Code provides that the court shall not grant a discharge of all debts provided for in the chapter 13 plan if the debtor has received

a discharge in a case under chapter 7 during the 4–year period preceding the date of the order for relief under chapter 13.

### 11 U.S.C. §§ 506(a) and (d)

The Debtors received a chapter 7 discharge of their personal liability on each of the mortgage debts in case number 09 B 18005 on September 1, 2009; the order for relief for that case was entered on May 19, 2009, the filing date. There remains, however, their *in rem* liability for those mortgage debts which can be provided for in a subsequent chapter 13 case as noted by the Supreme Court in *Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

The Debtors argue that they can provide for their *in rem* liability by bifurcating the junior mortgage claim under §§ 506(a) and (d) of the Code. Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estates's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim ... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

Section 506(a) categorizes creditors' allowed claims against debtors into secured claims and unsecured claims. An allowed

---

1. Previously this court has required the filing of an adversary proceeding to value and void liens. The better procedure is to file a motion pursuant to Federal Rule of Bankruptcy Procedure 3012 to value a security interest and to provide for that amount in the plan as the allowed secured claim.

claim that is secured by a lien on the debtor's property is secured to the extent of the value of the creditor's interest in the estate's interest in such property, and is deemed unsecured to the extent the claim exceeds that value. An undersecured claim is treated as a secured claim only up to the value of the collateral; the excess debt becomes an unsecured claim. The process is known as a "cramdown". The secured creditor's claim is limited to the value of the collateral to which the lien is attached. *In re Bartee*, 212 F.3d 277, 280 (5th Cir.2000).

The secured portion must be paid in full, while the unsecured portion is paid ratably with the claims of other unsecured creditors. A "strip-down" denotes the situation where a lien is stripped down to the value of the collateral. Where the collateral is fully encumbered by a prior lien such that the junior lien has no value to support it, the modification is referred to as a "strip-off" since the lien is stripped and eliminated. *In re King*, 290 B.R. 641, 645 (Bankr. C.D.Ill.2003).

> Section 506(d) provides:
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless-
>
>> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>>
>> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

The exceptions to lien avoidance for claims disallowed under sections 502(b), 502(e) and 501 are not relevant herein, however, they aid in understanding that the purpose of § 506(d) is to void liens on disallowed claims. Whether a lien can be avoided under section 506(d) should turn on whether its underlying claim has been disallowed.

The Debtors' position is that after valuing the junior lien at zero under section 506(a), it has been disallowed and left unsecured and is, therefore, void under section 506(d).

### Claim Allowance and Objection

 Code section 501 provides that a creditor may file a proof of claim. 11 U.S.C. § 501(a). Allowance of a claim constitutes a determination of its amount and establishes it as a charge against the bankruptcy estate. Claim allowance refers to the process of putting a claim in line for payment, subject to the Code's priorities. *In re Altheimer & Gray*, 601 F.3d 740, 741 (7th Cir.2010). Section 502(a) of the Code provides that "a claim or interest, proof of which is filed under section 501, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a).

Section 502(b) of the Code provides in part:

> (b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
>> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
>>
>> (2) such claim is for unmatured interest;
>>
>> (3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds-

(A) the rent reserved by such lease, without acceleration, for the greater of one year or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(1) through (6).

■ Wells Fargo has filed a claim herein. To date it has not been objected to. The junior mortgage claim has not been disallowed by court order on any of the grounds listed in § 502(b) or on any other basis. The Debtors have asserted no authority for their position that the junior mortgage lien has been disallowed due to its treatment under § 506(a). Section 506(a) determines the amount of funds a plan has to provide for the payment of a secured claim; it does not by its terms or operation disallow claims.

*11 U.S.C. § 1325(a)(5)*

Section 1325(a)(5) of the bankruptcy code provides:

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less that the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of such claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C § 1325(a)(5).

Clearly, a chapter 13 plan may provide for the payment of an allowed secured claim as long as the value, as of the effective date of the plan, of property to be

distributed under the plan on account of such claim is not less than the allowed amount of such claim, the amount established under the section 506 bifurcation provision. "The very essence of a § 1325(a)(5) modification is the write down or "cramdown" of a secured claim to the value of the collateral securing the debt." *In re Young,* 199 B.R. 643, 647 (Bankr. E.D.Tenn.1996).

Because the amount owed on the senior mortgage exceeds the value of the collateral, leaving no value to which the junior mortgage can attach, the Debtors argue that the junior mortgage should be valued at zero for plan confirmation purposes and immediately held to be void and unenforceable. The court agrees that the junior lien can be valued at zero for plan confirmation purposes, however, the lien cannot be held to be unenforceable and void until the plan ends and the Debtors receive a section 1328 discharge. The Debtors state in the plan's Special Terms section, however, that they are not entitled to a discharge.

■ The Debtors' most serious problem is that for confirmation of a chapter 13 plan, Code section 1325(a)(5) requires that it provide that the holder of a secured claim retain the lien securing the claim until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under section 1328. Because of the Debtors' 2009 chapter 7 discharge, which occurred during the 4–year period preceding the order of relief in this chapter 13 case, they are not eligible for a chapter 13 discharge. 11 U.S.C. § 1328(f). Therefore, the holder of the secured claim retains the lien until payment of the underlying debt as determined by nonbankruptcy law, that is, until the debt is paid in full. The strip off/avoidance occurs at discharge. *In re Jarvis,* 390 B.R. 600, 607 (Bankr.C.D.Ill.2008); *In re Lilly,* 378 B.R. 232, 236 (Bankr.C.D.Ill.

2007); *In re King,* 290 B.R. 641, 651 (Bankr.C.D.Ill.2003). The *Lilly* court held that "[w]here a debtor does not receive a discharge, however, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends ... This long-standing principle was not altered by BAPCPA." *Lilly,* 378 B.R. at 236. The *Jarvis* court held that "[t]he actual "strip off" occurs not at confirmation, but rather at discharge." *Jarvis,* 390 B.R. at 607. This principle was not altered by BAPCPA; it was reinforced by BAPCPA.

*In re King* also addresses the issue of when the strip off or avoidance of liens occurs. The court stated "[c]onsistent with its past practice, this Court also holds that the lien-avoiding effect of the confirmed plan, while established at confirmation, is contingent upon a discharge pursuant to Section 1328." *King,* 290 B.R. at 651. The *King* court also said: "If, for any reason, the DEBTORS do not receive a discharge under Section 1328, BANK ONE's mortgage lien remains in effect." *Id.*

■ The court agrees with the *Lilly* court that where a debtor is not eligible for a § 1328 discharge, allowing plan modifications to be permanent, in this case-allowing a permanent strip-off of the junior mortgage lien-after the end of the plan results in a de facto discharge, a benefit to which the Debtors herein are not entitled. *Lilly,* 378 B.R. at 236.

According to § 103 of the Bankruptcy Code § 506 applies to cases under chapters 7, 11, 12 and 13 of the Code. The United States Supreme Court has ruled, however, that lien stripping is not available under Chapter 7. *See Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). If section 506(d) does not allow lien stripping under chapter 7, the same may be true under chapter 13. The

court prefers, however, to weigh the treatment of secured claims pursuant to each chapter's specific provisions on the treatment of secured claims. *See, e.g.,* 11 U.S.C. §§ 1123(b)(5) and 1111(b) in chapter 11; §§ 1222(b)(2) and 1225(a)(5) in chapter 12 and §§ 1322(b)(2) and 1325(a)(5) in chapter 13.

 Code sections 506, 1322(b)(2) and 1325(a)(5) address secured liens. However, regarding whether mortgage debt can be bifurcated, sections 1322(b)(2) and 1325(a)(5) should prevail in the context of chapter 13 as they are the more specific provisions on the subject. The Supreme Court noted in *D. Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) that "[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." (citing *U.S. v. Chase,* 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117 (1890)). As noted in *Market Company v. Hoffman,* 101 U.S. 112, 115, 11 Otto 112, 25 L.Ed. 782 (1879), "a cardinal rule of statutory construction [is] that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgement, sect 2, it was said that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.'" Allowing the avoidance of mortgage liens solely under section 506(d) in the chapter 13 context could make section 1325(a)(5) superfluous.

 The Sixth Circuit has reconciled sections 1322(b)(2) and 506(a):

> [T]he only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506 a) and then to protect from modification any claim that is secured by any amount of collateral in the residence ... Any claim that is wholly unsecured, however, would not be protected from modification under § 1322(b)(2). To hold otherwise and extend the anitmodification clause to even wholly unsecured claims would vitiate the *Nobelman* Court's pronouncement that debtors were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.

*Tanner v. FirstPlus Financial, Inc. (In re Tanner),* 217 F.3d 1357, 1360 (citing *Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106). This court adopts the Sixth Circuit's reasoning and finds that sections 1322(b)(2), 1325(a)(5) and 506(d) can be reconciled to mean that section 506(d) allows lien avoidance where the claim secured by the lien has been disallowed, and that the specific provisions of § 1325(a)(5) govern the subject of lien retention in the context of chapter 13 plans.

The court finds that § 506(a) allows the bifurcation of the rights of holders of secured claims, rather than the modification of a secured claim. It does not change the rights immediately allowing the permanent modification of a secured claim to unsecured status, as strip off or avoidance occurs at discharge. Debtors' position that they can bifurcate the unsecured junior mortgage debt pursuant to § 506(a), and avoid the lien immediately is not well taken.

Wells Fargo objects to the bifurcation of the junior mortgage debt, arguing that such modification is improper under § 1322(b)(2). In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228, the Supreme Court held that a Chapter 13 debtor who had a single mortgage with a balance greater than the value of the residence it was

attached to, could not divide the mortgage into secured and unsecured portions pursuant to section 506(a). The court held that the full balance of the mortgage was governed by the antimodification clause of § 1322(b)(2). The opinion left unresolved whether the antimodification clause applies to a junior mortgage if that debt is wholly unsecured by any value in the property. Each circuit court of appeals that has considered this issue has held that § 1322(b)(2) does not prohibit avoidance of liens associated with wholly unsecured claims. *See, e.g., Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663, 667–69 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122, 126 (2d Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357, 1359–60 (11th Cir.2000); *Bartee v. Tara Colony Homeowners Ass'n., et al (In re Bartee),* 212 F.3d 277, 292 (5th Cir.2000); *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606, 615 (3d Cir.2000). Two Bankruptcy Appellate Panels have held likewise. *See, e.g., Domestic Bank v. Mann (In re Mann),* 249 B.R. 831, 840 (1st Cir. BAP 2000); *Lam v. Investors Thrift, et al. (In re Lam),* 211 B.R. 36, 41 (9th Cir. BAP 1997). The Seventh Circuit has not ruled on this issue.

The five courts of appeals and two bankruptcy appellate panels that have ruled that a wholly unsecured junior mortgage can be avoided did not address the lien retention issue. Those decisions were issued before the specific lien retention provisions of §§ 1325(a)(5)(B)(i)(I)(aa) and (bb) became law. The timing of an avoidance may not have been in issue in those cases.

The Bankruptcy Code was amended in 2005 pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, (BAPCPA), Pub.L. No. 109–8. That law added the specific lien retention provisions of §§ 1325(a)(5)(B)(i)(I)(aa) and (bb) to the Code. Before then the courts were divided on whether a secured creditor retained its lien until the end of a plan. *See In re Will,* 303 B.R. 357, 369 (Bankr. N.D.Ill.2003). Debtors would include in their plans allowed secured claims reduced pursuant to § 506(a). The debtors would pay the secured creditors the reduced amounts through the plan and then either convert the chapter 13 case to chapter 7 or have their chapter 13 cases dismissed pursuant to a chapter 13 trustee's motion to dismiss. The secured creditors argued that they were owed the full amounts due before the § 506(a) reductions, essentially, that at dismissal or conversion, they retained their liens. The debtors argued that they were entitled to a lien release after paying the reduced allowed amount regardless of whether a discharge was entered. *Compare In re Castro,* 285 B.R. 703, 709 (Bankr.D.Ariz.2002) *and In re Smith,* 287 B.R. 882, 883 (Bankr.W.D.Tex. 2002).

The *Castro* court held "that §§ 506(a) and (d) should be read consistently in cases under Chapter 13, which means that § 1325(a)(5)'s requirement for retention of the lien until payment of the allowed secured claim requires only the payment of the amount determined pursuant to § 506(a)." *Castro,* 285 B.R. at 709. That opinion is consistent with the ruling of *In re Townsend,* 256 B.R. 881, 884 (Bankr. N.D.Ill.2001): "Therefore, it is appropriate that the Plan provides that the Debtor's vehicle may vest free and clear of GMAC's lien after the Debtor has satisfied the secured portion of the indebtedness." The *Smith* court held that a secured creditor should not be compelled to release its security interest without payment of the debt in full, prior to the completion of the debtor's plan and the granting of a discharge. *Smith,* 287 B.R. at 883.

Two recent rulings interpret the issues involved herein. Those cases are *In re Ginther*, 427 B.R. 450 (Bankr.N.D.Ill.2010) and *In re Fox*, 2010 WL 1780293 (Bankr. N.D.Ill.2010). Each court voided a junior mortgage lien because the collateral value was exceeded by the amount due on the senior lien.

The *Ginther* court ruled that the lien was avoided without prejudice to the effects of the dismissal or conversion of the case prior to discharge under 11 U.S.C. §§ 348 and 349. *Ginther*, at 457, 2010 WL 1645923 at *6.

The *Fox* court ruled that "[c]onditional on Debtors' Chapter 13 Plan being confirmed and completed, and Debtors being discharged, the Junior Lien held by Defendant BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP will by this judgment be a nullity as being wholly unsecured. Said Defendant will file a release of the said lien within 28 days after Debtors receive their discharge. Jurisdiction is reserved to enter supplemental orders quieting title to the real estate as to the Junior Lien." *Fox*, 2010 WL 1780293 at *2. This ruling gives full effect to the lien retention requirement of § 1325(a)(5) that a secured creditor holds its lien until the earlier of discharge under § 1328 or until payment under nonbankruptcy law.

*Congressional Intent*

The Report of the Committee on the Judiciary of the House of Representatives states the following regarding the BAPCPA amendment to § 1325(a)(5)(B):

Subsection (a) of § 306 on the Act amends Bankruptcy Code § 1325(a)(5)(B)(i) to require—as a condition of confirmation—that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of when the underlying debt is paid or the debtor receives a discharge. If the case is dis-missed or converted prior to completion of the plan, the secured creditor is entitled to retain its lien to the extent recognized under applicable nonbankruptcy law.

H.R. REP. No. 109–31, pt. 1, at 71–72.

The 2005 BAPCPA amendment added to § 1325(a)(5), subsection (B)(i)(I), now specifically requires that the lien be retained until the earlier of (aa) payment of the debt determined under nonbankruptcy law or (bb) discharge under section 1328. That amendment was enacted to prevent chapter 13 debtors from paying the secured claim as provided for in the plan and obtaining a release of the creditor's lien prior to obtaining a Chapter 13 discharge. Allowing the Debtors herein to avoid Wells Fargo's junior mortgage lien under the terms proposed in the April 12, 2010 plan would offend this congressional policy.

In *Nobelman* where the strip down of a mortgage lien was not allowed because the lien enjoyed some collateral value, Justice Stevens noted "[a]t first blush it seems somewhat strange that the Bankruptcy Code should provide less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgages was intended to encourage the flow of capital into the home lending market. *See Grubbs v. Houston First American Savings Assn.*, 730 F.2d 236, 245–246 (C.A.5 1984) (canvassing legislative history of Chapter 13 home mortgage provisions)." *Nobelman*, 508 U.S. at 332, 113 S.Ct. 2106. Justice Stevens' remark has been interpreted as referring to first mortgages. A bankruptcy court found that "[t]here are no such concerns when dealing with the second mortgage market." *In re Plouffe*, 157 B.R. 198, 200 (Bankr.D.Conn.1993). Lenders involved in junior mortgage lend-

ing do not lend money for home purchases, which Congress sought to protect by enacting the § 1322(b)(2) prohibition on modification of mortgages. The Fifth Circuit's reasoning on this issue is persuasive. It opined that "[b]ecause secondary lending is targeted primarily at personal spending, allowing wholly undersecured second mortgages under the umbrella of the anti-modification clause would be unlikely to positively impact home building and buying." *Bartee,* 212 F.3d at 293. Avoidance of wholly unsecured second mortgages should not offend the congressional policy of encouraging lenders to finance home purchases.

## IV. CONCLUSION

■ The court finds generally that debtors may void wholly unsecured junior mortgage liens in chapter 13. However, because the Debtors herein are not eligible for a chapter 13 discharge and the April 12, 2010 plan does not include the appropriate lien retention language, confirmation of that plan is denied. The court made an oral ruling denying confirmation herein on May 10, 2010; this Order relates back to May 10, 2010.

The court ruled separately on the Debtors' Motion for Valuation of Security on May 10, 2010 and held that Wells Fargo's claim is not supported by any collateral value.