**In re Bradley M. FISHER and Dolly L. Fisher, Debtors.**

**No. 02–23310.**

United States Bankruptcy Court, W.D. New York.

Jan. 29, 2003.

John F. McKeown, Canandaigua, NY, for debtors.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On August 26, 2002, Bradley M. Fisher and Dolly L. Fisher (the "Debtors") filed a petition initiating a Chapter 13 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtors indicated that: (1) they were the joint owners of a residence, consisting of a house and flag lot with a shared driveway, located at 3967 East Lake Road, Town of Gorham, Ontario County, New York (the "Lake Road Residence"), which had a fair market value of $99,047.00; (2) Washington Mutual Home Loans ("Washington Mutual") had a 1998 first mortgage on the Lake Road Residence, with a balance due of $100,012.05 (the "Washington Mutual Mortgage"); and (3) Fairbanks Capital Corporation ("Fairbanks") held a 1999 second mortgage on the Lake Road Residence which had a balance due of $49,279.93 (the "Fairbanks Mortgage").

At a September 30, 2002 confirmation hearing, the Court orally confirmed the Debtors plan (the "Plan") which proposed to: (1) avoid the Fairbanks Mortgage lien, which the Debtors asserted was totally undersecured, pursuant to the decision of the United States Court of Appeals for the Second Circuit (the "Second Circuit") in *In re Pond*, 252 F.3d 122 (2001) ("*Pond*"); and (2) pay the unsecured creditors, including Fairbanks, a twenty-two percent (22%) distribution. The Court's oral confirmation of the Plan was contingent upon the Debtors bringing the necessary proceeding to have the Fairbanks Mortgage lien avoided and the Fairbanks Mortgage indebtedness treated as unsecured pursuant to *Pond* and Section 506(d).[1]

---

1. Sections 506(a) and (d) provide, in part, that:
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
   (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless–
      (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

On October 15, 2002, the Debtors commenced the *Pond* proceeding (the "*Pond* Motion") which this Court allows to be prosecuted by motion in the absence of a specific objection by the mortgage holder that the proceeding be converted to an adversary proceeding.

In the Pond Motion, the Debtors alleged that: (1) the Lake Road Residence had a value of $99,047.00, as established by a comparative market analysis (the "Market Analysis"), prepared by David A. Kleine ("Kleine"), a realtor associate with the Lakeville office of Nothnagle Realtors, a copy of which was annexed to the motion; (2) as of the date of the petition, the balance due on the Washington Mutual Mortgage was $99,813.97, as established by a September 16, 2002 mortgage statement (the "Mortgage Statement");[2] and (3) since the balance due on the Washington Mutual Mortgage exceeded the value of the Lake Road Residence, the Fairbanks Mortgage was totally unsecured on the date of the filing of the petition, and, therefore, its lien should be avoided and the balance due to Fairbanks should be treated as unsecured for purposes of the Plan.

On November 1, 2002, Fairbanks interposed Opposition to the Pond Motion which alleged that: (1) the Lake Road Residence had a significantly higher value than $99,047.00; and (2) the Lake Road Residence had a value of $145,000.00 as set out in an attached October 25, 2002 brokers price opinion (the "Price Opinion"), prepared by Andy Kane ("Kane"), a member of the National Association of Real Estate Appraisers.

On December 12, 2002, the Debtors interposed an additional Response which alleged that the tax assessments for the Lake Road Residence were incorrect, and that the correct tax assessment for the Lake Road Residence was $92,000.00, rather than the $101,200.00 set out in the Price Opinion.

On January 6, 2003, Fairbanks filed an Addendum to the Price Opinion, which indicated that after Kane personally inspected the interior of the Lake Road Residence, he believed that the market value of the Lake Road Residence was $145,000.00.

On January 8, 2003, the Court conducted a trial on the Pond Motion at which the Debtor, Dolly L. Fisher, Kleine and Kane testified.

At trial, the Debtor, Dolly L. Fisher testified that: (1) the Debtors had purchased the Lake Road Residence in July 1998, for $101,000.00; (2) in July 1998 when the Debtors purchased the Lake Road Residence it had been appraised for approximately $111,000.00; (3) at the time they obtained the Fairbanks Mortgage in 1999, Fairbanks obtained an appraisal of the Lake Road Residence which valued it at $180,000.00; (4) at the time they obtained the Fairbanks Mortgage, the Debtors believed that the $180,000.00 appraisal was unrealistic; and (5) she did not believe that the Lake Road Residence was worth less on the date of the filing than when the Debtors purchased it in 1998.

At trial, Kleine testified that: (1) the Market Analysis which he had prepared in preparation for the Debtors' bankruptcy was not an appraisal; (2) he had used comparable properties in an adjoining town, rather than in the Town of Gorham

---

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506 (2002).

**2.** The Mortgage Statement indicated that on the date of the filing of the petition, there was an escrow balance being held with Washington Mutual of $1,676.11.

where the Lake Road Residence was located, because he did not feel that the available comparables in the Town of Gorham, which would have been generally larger homes on larger lots, were appropriate comparables even after being adjusted downward; (3) although he was not an appraiser, he stood by his Analysis which indicated that the Lake Road Residence had a suggested sale price of between $97,808.00 and $100,285.00, with an adjusted price of $99,047.00; (4) in his opinion, it would not be unreasonable for someone to pay $100,000.00 for the Lake Road Residence; and (5) in order to explain why his Market Analysis valued the property at less than its purchase price in 1998, Kleine speculated that: (a) the Gorham real estate market was somewhat depressed since "9/11," notwithstanding the low available interest rates; (b) it may have been more of a seller's market in 1998 and more of a buyer's market now; and (c) it may have been that the Debtors paid too much for the Lake Road Residence in 1998.

At trial, Kane testified that: (1) the Lake Road Residence was in good condition and required minimal exterior repairs; (2) he believed that the Gorham real estate market had shown a slight increase since 1998, but certainly not a decrease; (3) he had used Gorham comparables and made the appropriate adjustments for the differences in square footage, condition, acreage and so forth, by utilizing standard appraisal techniques; (4) he agreed that the $180,000.00 appraisal alleged to have been obtained by Fairbanks when the Fairbanks Mortgage was entered into was not reasonable; and (5) indicated that he would personally pay $120,000.00 for the Lake Road Residence.

### DISCUSSION

#### I. *In re Pond*

■ The Second Circuit in *Pond* held that a wholly unsecured claim is not pro-

tected under the anti-modification provisions of Chapter 13. Therefore, if there is no equity in a debtor's residence after accounting for other encumbrances that have priority over a mortgage lien, so that the mortgage lien is not even partially secured, the lien can be avoided and the mortgage debt treated as unsecured.

#### II. *Overview*

■ In a *Pond* proceeding, the anti-modification provision set forth in Section 1322 places the burden on the debtor to demonstrate that there is not even $1.00 of value over prior valid liens to support the mortgage lien that is to be avoided.

■ The debtor's burden will naturally be higher, in that the Court will scrutinize the evidence more carefully, when: (1) it appears that there was equity available for the mortgage that is to be avoided at the time it was executed; (2) the alleged value deficiency may have been created in part because of a debtor's failure to make payments on superior mortgages, or to pay obligations such as real estate taxes and water bills which become a superior lien on the property; and (3) the alleged value deficiency is not substantial, as in this case where it was alleged to be less than $800.00.

As discussed above, *Pond* proceedings in the Rochester Division of the Western District of New York are authorized to be brought initially by motion under the Court's default procedures. Since the decision of the Second Circuit in *Pond* in May 2001, the Court has noted, with interest, that many Pond motions have gone by default where the alleged value deficiency has been less than $1,000.00.

#### III. *The Lake Road Residence*

■ In the present case, I find that the Lake Road Residence has a value of at least $100,000.00 which exceeds the outstanding balance on the Washington Mutu-

al Mortgage of $99,047.00. Therefore, the Fairbanks Mortgage cannot be avoided under Section 506 and the decision of the Second Circuit in *Pond.*

The following credible evidence presented at trial supports the finding that the Lake Road Residence has a value of at least $100,000.00, which exceeds the applicable balance due on the Washington Mutual Mortgage: (1) the Debtors purchased the Lake Road Residence in 1998 for $101,000.00; (2) the Debtor, Dolly L. Fisher, testified that she did not believe that the Lake Road Residence was worth less than the $101,000.00 the Debtors purchased it for in 1998; (3) Kleine testified that it would not be unreasonable for a buyer to pay $100,000.00 for the Lake Road Residence, a price that was within his own Market Analysis value range; and (6) Kane, a certified real estate appraiser, testified in his opinion, that the value of the Lake Road Residence was $145,000.00, and he would not hesitate to pay $120,000.00 personally for the Lake Road Residence.

Based upon the foregoing evidence, the Debtors have not met their burden to demonstrate that there is no value over prior liens that would enable the Court to avoid the Fairbanks Mortgage.

### *CONCLUSION*

The *Pond* motion is in all respects denied, and the Chapter 13 Trustee shall place the Debtors' case back on the confirmation hearing calendar.[3]

**IT IS SO ORDERED.**

---

**3.** At trial the Debtors indicated that they had been escrowing the post-petition mortgage payments on the Fairbanks Mortgage, so that they could immediately cure any post-petition defaults if the Court denied the *Pond* motion. They further testified that they believed that a modified plan providing for the payment of ongoing post-petition mortgage payments due to Fairbanks would still be confirmable by the Court.