**In re MILLSPAUGH, Randy D. and Millspaugh, Sharon K., husband and wife, Debtor.**

No. 03–00726.

United States Bankruptcy Court, D. Idaho.

Oct. 24, 2003.

Lawrence G. Sirhall, Jr., Boise, ID, for Debtors.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### INTRODUCTION

In this chapter 13 case, Randy and Sharon Millspaugh (the "Debtors") seek to "strip off" a creditor's security interest in their residence through a provision in their plan. Though the creditor has not objected to this treatment and no other party objected to confirmation of the Debtors' chapter 13 plan, the Court took the matter under advisement in order to evaluate the procedure urged by the Debtors.

### BACKGROUND AND FACTS

The Debtors filed a voluntary joint petition for chapter 13 relief on March 7, 2003. Doc. No. 1. They list, on schedule A (real property) a home located at 13069 Arroyo in Kuna, Idaho (the "Residence"). The Debtors assert that the Residence has a value of $98,000.00. *Id.*

On schedule D (creditors holding secured claims), the Debtors list Fairbanks Capital Corporation ("Fairbanks") as the holder of a "first mortgage" position secured by the Residence. The Debtors show Fairbanks' claim as $102,401.00. *Id.* The Debtors further list Homecoming Financial ("Homecoming") as the holder of a "second mortgage" of $37,565.98.

The Debtors' original chapter 13 plan was filed on March 7. *See* Doc. No. 2. It proposed, in part, to avoid Homecoming's lien interests. *Id.* at 4–5. However, that proposition was contained within the portion of this District's model Chapter 13 Plan and Related Motions[1] that addresses § 522(f)(1)(B),[2] avoidance of nonpossessory, non-purchase money security interests in exempt property.[3]

Homecoming, on May 12, filed a "Request for Special Notice and Service of

---

1. The model plan, developed over several years with the assistance of many of the District's most adept and experienced practitioners, can be found on the Court's Internet website, www.id.uscourts.gov.

2. Unless otherwise indicated, all statutory citations are to Title 11, U.S.Code, and all references to Rules are to the Federal Rules of Bankruptcy Procedure.

3. While Homecoming's lien might arguably be characterized as nonpossessory and non-purchase money in nature, and while the Residence was claimed as exempt on the Debtors' schedule C, the provisions of § 522(f)(1)(B)

Papers and Reservation of Rights." *See* Doc. No. 11 (the "Request for Notice/Service"). In this pleading, Homecoming "request[ed] special notice of all events relevant to the . . . bankruptcy and copies of all pleadings or documents filed in relation to the . . . bankruptcy, including all pleadings or notices" be served on its identified counsel. *Id.* at 1. Homecoming did not, however, object to the treatment proposed in the original plan.

On May 19, the Debtors filed their "Amended Chapter 13 Plan." *See* Doc. No. 13. This plan continued the earlier proposed approach to Homecoming's lien under § 522(f)(1)(B). *Id.* at 8.[4] The Debtors scheduled and noticed to creditors a July 2 confirmation hearing on their amended plan. *See* Doc. No. 14; Doc. No. 16. This plan and notice were sent to "Homecoming Financial, P.O. Box 890036, Dallas, Texas, 75389" which was the address originally set forth on the Debtors' Master Mailing List ("MML"), and to "Homecoming Financial, CT Corporation, 300 N. 6th St., Boise, Idaho 83702" which was an address not previously on the MML. *See* Doc. No. 16. Service was also made on Homecoming's counsel at the address shown on the Request for Notice/Service. *Id.*

On June 5, the Debtors filed a brief in support of confirmation of their amended plan. Doc. No. 19. They urged the Court to avoid Homecoming's lien under the authority of *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002), and to do so through the plan confirmation process rather than an adversary

proceeding. Doc. No. 19 at 1 (citing *In re King,* 290 B.R. 641 (Bankr.C.D.Ill.2003)).[5]

Though the chapter 13 trustee recommended confirmation and endorsed a proposed form of order, the Court at hearing on July 2 continued confirmation to August 12, 2003. *See* Doc. No. 23 (minute entry). This was necessitated by the erroneous use of § 522(f)(1)(B) as the asserted basis for avoidance of Homecoming's lien. *See supra* note 3.

A "Second Amended Chapter 13 Plan" was filed on July 11, 2003. *See* Doc. No. 24 (the "Plan"). The Plan provides, under ¶ 4(b)(1):

*HOMECOMING FINANCIAL HAS A DEED OF TRUST WHICH IS A **SECOND MORTGAGE** AGAINST DEBTORS' RESIDENCE WHICH THIS SECOND AMENDED CHAPTER 13 PLAN PROPOSES TO STRIP FROM THE RESIDENCE AND RENDER THIS CREDITOR UNSECURED UPON CONFIRMATION OF THE PLAN. THE VALUE OF THE DEBTORS' RESIDENCE IS LESS THAN THE AMOUNT OWED TO THE FIRST LIEN HOLDER.*

*Id.* at 5 (capitalization and emphasis in original). Identical language is also found in ¶ 4(b)(2). *Id.* at 6.

The Plan was scheduled for a confirmation hearing on August 12. *See* Doc. No. 25 (Notice of Hearing). The Plan and this notice were served on Homecoming's counsel per the request for Notice/Service. It was also served on Homecoming in the following fashion:

---

limit the type of exempt property to which § 522(f)(1)(B) applies. Real property and motor vehicles are notably absent. Section 522(f)(1)(B) was therefore inapplicable.

**4.** The citation in this plan contains a typographical error and refers to " § 522(E)(1)(B)" though the described basis

for avoidance is the same as in the original plan.

**5.** The Debtors served Homecoming's counsel with the brief on June 5, and also again served such counsel with notice of the July 2 hearing. *See* Doc. No. 20.

Homecoming Financial
Care of Registered Agent
CT Corporation
300 N 6th Street
Boise, ID 83702

Homecoming Financial
Attn: Neil Joshi
State of Idaho Account Manager
PO Box 890036
Dallas, TX 75389

*See* Doc. No. 26 (Affidavit of Mailing).[6]

Homecoming did not appear at the hearing on August 12, nor did it file any objection to the Debtors' proposed treatment of its lien. No objections to confirmation were filed by other parties in interest, and none were raised at the hearing. The chapter 13 trustee recommends confirmation of the Plan.

## DISCUSSION AND DISPOSITION

### 1. Lack of objection

■■■ Homecoming has not raised any objection to the proposed treatment of its claim in the Plan. Despite the lack of objection, "courts are not required to grant a request for relief simply because the request is unopposed." *In re Franklin,* 210 B.R. 560, 562 (Bankr.N.D.Ill.1997). Indeed, "[t]he granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion. Moreover, the bankruptcy court must first determine that all parties were properly noticed and given sufficient opportunity to be heard." *Nunez v. Nunez (In re Nunez),* 196 B.R. 150, 156–57 (9th Cir.BAP1996) (citation omitted); *see also In re Lancaster,* 03.1 I.B.C.R. 31, 32, 2003 WL 109205 (Bankr.D.Idaho 2003) (noting that lack of opposition "does not absolve the Court of its responsibility to ensure that relief may properly be entered.")

The Court therefore evaluates the relief sought by the Debtors, and the procedure they use.

### 2. The availability of "lien stripping" in chapter 13.

■■■ The first issue presented is whether the Debtors may "strip off" the allegedly wholly unsecured lien of Homecoming notwithstanding the language of § 1322(b)(2) that prohibits modifying the rights of holders of security interests in a debtor's principal residence.[7]

While this question was long subject to debate, it was conclusively resolved in favor of the debtor by the Ninth Circuit in *Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir.2002). *See also Lam v. Investors Thrift (In re Lam),* 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed,* 192 F.3d 1309 (9th Cir. 1999). *See also, In re Samala,* 295 B.R. 380, 381 (Bankr.D.N.M.2003) (noting the majority of courts, including all circuit courts and bankruptcy appellate panels considering the issue, have concluded § 1322(b)(2) does not apply to wholly unsecured creditors); *In re Callander,* 263 B.R. 567, 568–69 (Bankr.S.D.Ohio 2001) (surveying cases); *In re German,* 258 B.R. 468, 469–70 (Bankr.E.D.Okla.2001) (same);

---

**6.** There is an apparent typographical error in this Affidavit. Its text recites service of the Plan occurred "on 28 May 2003." However, the Plan hadn't been executed by the Debtors until July 7 and was filed on July 11. It appears likely that the service actually occurred on July 10, when this Affidavit was signed. The Court will allow the Debtors' counsel to supplement the record with a corrected or amended affidavit reflecting the actual date of service.

**7.** Section 1322(b)(2) provides in pertinent part that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]"

4 L. King, Collier on Bankruptcy ¶ 506.03[7][c][iii], pp. 506–75 to 506–76 (rev. 15th ed.1999) (hereinafter "Collier") (stating "most courts" have concluded that a wholly unsecured interest may be stripped off in chapter 13 consistent with *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)); 8 Collier ¶ 1322.06[1][a], at 1322–21 to 1322–22 (noting several courts so holding, including *Zimmer* and *Lam* and cases from the Second, Fifth, Sixth and Eleventh Circuits and the First Circuit BAP).[8] If a debtor can show that the putatively secured interest of the residential creditor is in fact totally unsecured, the debtor has the ability to strip off the lien.

Here, the Debtors' allegations of the value of the Residence ($98,000.00) and the amount of the first position secured claim ($102,401.00) were not put at issue.[9] The Court therefore concludes that *Zimmer* relief is appropriate, provided no procedural infirmities exist.

### 3. The arguable requirement of an adversary proceeding

Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding if a party wishes "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr.P. 7001(2).[10] Must the attempt to strip off Homecoming's lien be pursued through an adversary proceeding under this Rule? [11]

To answer the question requires strict attention to the terms used in Rule 7001(2). According to the court in *King*.

> "[V]alidity" means the existence or legitimacy of the lien itself, "priority" means the lien's relationship to other claims or interests in the collateral, and "extent" means the scope of the property encompassed by or subject to the lien.

*King*, 290 B.R. at 648; *see also In re Hoskins*, 262 B.R. 693, 696–97 (Bankr. E.D.Mich.2001); *In re Hudson*, 260 B.R. 421, 433 (Bankr.W.D.Mich.2001). *Accord*, 10 Collier ¶¶ 7001.03[1], 7001.03[2], at 7001–10 to 7001–13.

"Validity" and "priority" are not implicated. *Hoskins*, 262 B.R. at 696 (lien stripping "has nothing to do with the 'validity' or 'priority' of [the mortgage]"); *Hudson*, 260 B.R. at 433 ("Validity" means "enforceable" and "priority" is "superiority in rank or position.") That lien stripping addresses the "extent" of the mortgage has likewise been rejected:

8. *Zimmer* and *Lam* concluded that *Nobelman*, which held that § 1322(b)(2) barred a debtor's attempt to "strip down" an *under*secured residential security interest, did not apply to holders of totally unsecured claims, thus validating a "strip off" of such security interests. *See* 313 F.3d at 1223–27; 211 B.R. at 40–41. Though *Lam's* analysis was adopted by several courts within the Circuit, BAP decisions are generally viewed as lacking binding effect. *See, e.g., Zimmer*, 313 F.3d at 1225 n. 3; *In re DeBoer*, 99.3 I.B.C.R. 101, 103 n. 4, 1999 WL 33486710 (Bankr.D.Idaho 1999). This left the "strip off" question in flux until *Zimmer*.

9. The senior mortgagee, Fairbanks, filed a proof of claim asserting a $102,579.77 se-cured claim. *See* Claim No. 5, filed 4/3/03. Rule 3001(f) makes this filed proof *prima facie* evidence as to both validity and amount.

10. Rule 7001(2) contains an exception for lien avoidance issues arising under Fed. R. Bankr.P. 4003(d), which concerns § 522(f) actions. This exception is not at issue in this case.

11. A litigant may, of course, elect to seek relief by an adversary proceeding even if not strictly required, and might be willing to suffer any attendant delay or procedural rigor in exchange for other perceived benefits. This Memorandum considers whether such a proceeding is mandatory under the Rules.

Construing "extent" this broadly, however, creates a conflict with Rule 3012. This latter rule ... states that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest *on motion* of any party in interest." F.R.Bankr.P. 3012 (emphasis added)....

...

We therefore agree ... that the term "extent," as used in Rule 7001(2), refers not to collateral valuation, but rather to identification of the property to which a lien is alleged to be subject.

*Hoskins,* 262 B.R. at 696–97. Collier also believes that the term "extent of a lien" in Rule 7001(2) can be misinterpreted, and rejects the idea that valuation of a lien is a determination of the extent of that lien. ¶ 7001.03[1], at 7001–11.[12]

Many, perhaps most, courts that have considered the precise question have concluded that an adversary proceeding is not required to strip off a wholly unsecured mortgage from a residence. *See, e.g., In re Sadala,* 294 B.R. 180, 183–85 (Bankr. M.D.Fla.2003); *Dickey v. Beneficial Fin. (In re Dickey),* 293 B.R. 360, 362–63 (Bankr.M.D.Pa.2003); *King,* 290 B.R. at 645–47; *In re Nowling,* 279 B.R. 607, 609–11 (Bankr.S.D.Fla.2002) (implicitly allowing by motion or in plan, but rejecting on

basis of inadequate notice); *Hoskins,* 262 B.R. at 696–97; *Hudson,* 260 B.R. at 433; *In re Fuller,* 255 B.R. 300, 305–06 (Bankr. W.D.Mich.2000). *But see In re Pierce,* 282 B.R. 26, 28 (Bankr.D.Utah 2002) (requiring adversary); *In re Kressler,* 252 B.R. 632, 634–35 (Bankr.E.D.Pa.2000) (same); *In re Enriquez,* 244 B.R. 156, 158 (Bankr. S.D.Cal.2000) (same).[13]

*Zimmer* did not address the procedural issue; there the relief had been sought through an adversary proceeding. *See* 313 F.3d at 1221. The debtor in *Lam* also sought relief by way of an adversary proceeding. 211 B.R. at 37. There is thus an absence of appellate decisional law in this Circuit on the question.

In the past, this Court has not been squarely presented with this procedural question in the context of a strip off of an entirely unsecured lien position.[14] Having evaluated the conflicting decisions on the issue, the Court today concludes that no adversary proceeding is required and that Rule 7001(2) is not implicated when a debtor seeks to value an allegedly wholly unsecured claim against a residence for purposes of stripping off that lien *unless* that debtor seeks to otherwise contest the validity, extent or priority of the lien in addition to valuing it.

**12.** The treatise notes that, while one could argue that a proceeding under Rule 3012, which implements § 506(a), is one which determines the "extent" of a lien, the notion is refuted by the Advisory Committee Notes to Rule 3012. Those Notes make the distinction that Rule 7001 is "relevant to the basis of the lien itself" as distinguished from valuation for purposes of, *inter alia,* § 361, § 1124, or § 1129(b). "Thus, under the Bankruptcy Rules, valuation is accomplished by motion under Rule 9014, rather than in an adversary proceeding under Rule 7001." 10 Collier ¶ 7001.3[1], at 7001–12; *see also* 4 Collier ¶ 506.03[9][a], at 506–96 to 506–97.

**13.** *Sadala* analyzes *Enriquez* and finds it unpersuasive, since one of the cases upon which *Enriquez* relied, *Toplin v. Commercial Western Finance Corp. (In re Commercial Western Finance Corp.),* 761 F.2d 1329 (9th Cir.1985), involved an attack on the underlying validity of a lien as well as or in addition to a question of valuation. 294 B.R. at 184.

**14.** The Court has, however, regularly allowed § 506(a) valuation issues with *under*secured creditors in chapter 13 to be presented by Rule 3012 motions incorporated into the plan. *See* discussion *infra.*

It is important to recognize, as the majority and better reasoned cases do, that stripping off a lien is simply a result that flows under § 506(d) from the valuation of the allegedly unsecured mortgage. Valuation is a contested matter initiated by motion pursuant to Rule 3012.[15] As noted previously, this District's model chapter 13 plan acknowledges a debtor's ability to raise and resolve certain "related motions" in the confirmation process. Indeed, that model plan contemplates that valuation decisions will be made under Rule 3012 as to any secured creditor that may have a lien valued under § 506(a).[16]

"Stripping off" a lien is a variant of "stripping down" a lien. *Lam*, 211 B.R. at 37 n. 2; *see also King*, 290 B.R. at 648 n. 4. It is distinguishable by the fact that, in a strip off, the entirety of the lien is negated while in a strip down, the partially secured lien is bifurcated and only the unsecured portion is removed. *Lam*, 211 B.R. at 37 n. 2. This sort of valuation process is regularly conducted, in regard to partially secured creditors, through plan confirmation and plan-related motions. *See supra* note 14.[17] The Court sees no compelling reason to require a different

procedural vehicle for valuation of an allegedly wholly unsecured creditor. *Accord Zimmer*, 313 F.3d at 1225 (noting the proper focus is on § 506(a) and whether a claimant's security interest has any actual "value"), and at 1227 (noting that courts adopting the minority position on lien strip off "too easily dismiss the role of a § 506(a) valuation," quoting *Johnson v. Asset Mgmt. Group, LLC*, 226 B.R. 364, 367–68 (D.Md.1998)).

Therefore, the Court concludes the attempt to strip off wholly unsecured liens may occur through a Rule 3012 valuation motion and does not require an adversary proceeding. Such a motion may be subjoined with a plan brought on for confirmation, or it may be separately asserted and prosecuted.[18]

### 4. Due process and service requirements for valuation and strip off

Just because a Rule 3012 valuation request may be advanced by motion, either on a stand-alone basis or through confirmation of a chapter 13 plan as a "related motion" incorporated into the plan, does

---

15. Rule 3012 provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

16. The language of the model plan provides, in part, that a creditor who wishes to oppose the plan and its related motions must file a timely objection, in the absence of which the Court "may confirm [the] plan [and] accept the valuations and allegations herein, and grant the motions without further notice or hearing." Model Plan at 1. It also provides, under ¶ 4.2.1, that any portion of a creditor's claim "in excess of the allowed value of the collateral" will be treated as an unsecured claim, and that:

> Secured creditors' rights and claims will be modified in accordance with the values and terms provided for herein by debtor. An order valuing the secured portion of a claim, at less than the total amount of the claim, voids the creditor's lien to the extent of the unsecured portion of the claim.
>
> *Id.* at 3–4.

17. Recall, though, that *Nobelman* prohibits stripping down creditors secured only by residential property. 508 U.S. at 329–30, 113 S.Ct. 2106; § 1322(b)(2).

18. Though such a motion may be pursued independently of a plan's confirmation, a plan must comply with § 1325(a)(5) as to any secured creditor. Thus, the issue of strip off would likely be resolved prior to or contemporaneously with confirmation.

not mean that procedural safeguards are lacking.

### A. Due process, and clarity of notice

 Taking a property interest from a creditor—as a strip off does—raises due process concerns. *See, e.g., Dickey,* 293 B.R. at 362–63 (discussing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).[19] *Dickey* concluded that a valuation request designed to strip off a creditor's security interest or lien must be accompanied by notice "reasonably calculated to make the party aware of the impact confirmation will have on the creditor's rights, and [the notice] must provide a reasonable time in which the creditor can respond." *Id.* at 363. *See also King,* 290 B.R. at 649–50 (same); *accord In re Ruehle,* 296 B.R. 146, 157–60 (Bankr. N.D.Ohio 2003) (considering notice and due process issues in regard to a debtor's attempt to discharge student loans through a chapter 13 plan provision). *King* noted that a valuation request within a plan, in order to strip a lien, must clearly and accurate characterize the creditor's claim and give the creditor an explanation of what the debtor proposes to do and the factual and legal basis on which his proposal is based. 290 B.R. at 649–50. As observed in *Dickey:*

> Attempting to strip off mortgages without adequate notice contributes to the perception that the bankruptcy system is little more than a procedural jungle in which the parties engage in guerilla tactics, laying camouflaged traps to catch tactical missteps by unwary or distracted creditors.

*Id.* at 363. *Accord* 4 Collier ¶ 506.03[9][a], at 506–97 ("[I]t would seem at a minimum that the plan proponent should provide specific notice to the secured creditor explicitly pointing out the provision and the debtor's intent, and that this notice should not be set forth in a paper that also discusses a host of other matters that may or may not relate specifically to the secured creditor.")

 Consistent with these decisions, and in order to adhere to fundamental principles of due process, the Court concludes that a debtor attempting to strip off a lien under the authority of *Zimmer* must, in the plan and its related motions, make clear and conspicuous the proposed treatment of the creditor's claim and the factual and legal basis for such treatment. *See In re Rheaume,* 296 B.R. 313, 321 (Bankr.D.Vt.2003) ("While creditors are certainly under an obligation to read plans and to assert their objections in a timely fashion if they oppose the relief sought in the plan, it is equally true that the relief being sought must be articulated clearly and, particularly if it is unusual relief, conspicuously set forth in the text—that is to say, not 'buried' among boilerplate provisions." (citations omitted)); *King,* 290 B.R. at 648–50; *Hoskins,* 262 B.R. at 698–99. One court identified the consequences of inadequate notice:

> The burden is squarely on the shoulders of the debtor, as the drafter of the plan, to ensure that the language of the plan provides adequate notice of the debtor's intentions and the basis for the proposed lien avoidance. If the basis for avoidance is improper or if the notice to the creditor is inadequate, the secured property will still vest in the debtor upon

---

19. *Mullane* established that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. 652.

confirmation, as provided by Section 1327(b), but will remain subject to the unavoided lien rather than vesting "free and clear" as permitted by Section 1327(c).

*In re Zimmerman*, 276 B.R. 598, 603 (Bankr.C.D.Ill.2001).

The conclusion reached today is consistent with the policies recently discussed in *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489 (9th Cir.BAP2003). *Dynamic Brokers* considered a debtor's use of a chapter 11 plan to reduce a creditor's claim without complying with claim objection rules or procedures. While it is readily conceded that the issues in *Dynamic Brokers* are not identical to those presented in the instant case,[20] the Panel's discussion is instructive:

> [U]tilizing a plan confirmation proceeding as a method of objecting to a claim presents troubling policy issues in the face of rules of procedure that appear to require formal objections to claims. The construct of the statute and rules that is held out to the public is that claims are deemed allowed unless there is an objection in accordance with rules that prescribe a precise procedure for objecting. Neither the statute nor the rules say "oh, by the way, we can also sandbag you by sneaking an objection into a reorganization plan and hoping you do not realize that we can use this device to circumvent the claim objection procedure mandated by the rules." That is not the law, and if it were the law, it would be a material disservice to public confidence in the integrity of the bankruptcy system.
>
> While we do not hold that a plan can never be used to object to a claim of a creditor who does not actually consent to such an objection, *by holding that the essence of Rule 3007 must be complied with, we are holding that considerations of due process mandate great caution and require that the creditor receive specific notice (not buried in a disclosure statement or plan provision) of at least the quality of specificity, and be afforded the same opportunity to litigate one-on-one, as would be provided with a straightforward claim objection under Rule 3007.* In many chapter 11 cases, the only safe way to proceed will be by way of the separate claim objections that the rules of procedure and the Bankruptcy Code contemplate.

293 B.R. at 497 (emphasis added).[21]

■■■ It is not the function of this Decision to attempt to presage every vari-

---

**20.** For example, in *Dynamic Brokers*, the Panel was dealing with chapter 11 practice. It stated:

> [T]here is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007. Nor would it make sense to do so in light of the fact that a plan confirmation is a collective proceeding while a claim objection is typically a two-party dispute. Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit.

293 B.R. at 496. On the other hand, Chapter 13 practice is somewhat different. Several "related motions" may be addressed at confirmation, including those (such as motions under § 522(f), § 365(a), and § 506(a)) that are "typically two-party dispute[s]."

**21.** The Court further believes its ruling today follows the sense of the concurring opinion in *Dynamic Brokers*, which concluded that:

> [I]t may be possible for a debtor to object to a creditor's claim through a proposed plan, if the proper notice is given. *See, e.g., Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1336 (9th Cir.1985)

ation of plan language, its placement, its emphasis, or its obvious (or concealed) nature. Each case must be evaluated on its own merits. The Court concludes that, while perhaps not paradigmatic, the plan treatment and notice provided Homecoming in this case is sufficiently clear, particularly since the Debtors also provided that creditor with a brief, Doc. No. 19, explaining the relief sought and the basis for that relief in greater detail.

### B. Proper service on the creditor

■ While Rule 3012 does not expressly incorporate Rule 9014, the Court concludes that the sort of relief at issue when secured claims are valued, including stripping those creditors' liens down or off, constitutes a contested matter. *See Nowling*, 279 B.R. at 609–10; *King*, 290 B.R. at 648 (citing Collier at ¶ 7001.03[1] ). Rule 9014, by direct internal reference, requires service in contested matters to be made consistent with Rule 7004. *In re Egan*, 02.4 I.B.C.R. 177, 178 (Bankr.D.Idaho

(rejecting attempts to avoid liens through chapter 11 plan); *Dresser Indus. v. Rite Autotronics Corp. (In re Rite Autotronics Corp.)*, 27 B.R. 599, 602 (9th Cir. BAP 1982) ("where a debtor questions the quality of a claim thereby placing the creditor in a position of potential default and loss, due process would call for specific notice to the creditor."). *Cf. Shook v. CBIC (In re Shook)*, 278 B.R. 815, 826 (9th Cir. BAP 2002) (formal objection to claim might not always be necessary); chapter 13 plan may be used to determine amount of claim if creditor receives clear notice that plan will do so.
293 B.R. at 500 (Perris, J. concurring). Judge Perris concluded that the plan in *Dynamic Brokers* did not provide sufficient notice to serve as a substitute for a claim objection properly asserted under Rule 3007; the only notice in the plan was a provision stating a dollar amount different than what the debtor had earlier stated in its schedules. Moreover, Judge Perris noted that "[t]here was nothing in the plan that pointed out the discrepancy or gave any explanation for it." *Id*

2002).[22] *See also Lancaster*, 03.1 I.B.C.R. at 31, 2003 WL 109205. The court in *Nowling* observed:

> The Code and Rule provide for a different scheme for the service of a Notice of Commencement of a case and Proof of Claim form by the Clerk of Court, that of service of a Chapter 13 Plan, and that of service of a contested matter, such as a motion to value security under Fed. R. Bankr.P. 3012. In accordance with Fed. R. Bankr.P.2002 and 3015(d) . . . service requirements for a Notice of Commencement of Case and Proof of Claim form are markedly different from the service and notice procedures for contested matters such as a motion to value security as outlined above by the interplay of § 506(a) and Fed. R. Bankr.p. 3012, 9013, 9014 and 7004.

279 B.R. at 610.[23] *Accord Ruehle*, 296 B.R. at 159 (observing that satisfying the notice requirements under Rule 2002 does not *per force* meet the service require-

at 501. This was "procedurally inadequate" and "failed to provide explicit notice to [the creditor] that his claim was being challenged and would be reduced unless [he] took affirmative action." *Id.* (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1215 (9th Cir.1994)).

**22.** *Egan* considered the notice and service requirements for objections to a creditor's proof of claim. 02.4 I.B.C.R. at 177–78 (discussing Rules 3007, 9014 and 7004). Placing the value of a claim at issue is no less invasive.

**23.** Like this Court in *Lancaster*, the court in *Nowling* was "mindful of the necessity of proper service by debtors of motions to avoid judgment liens under § 522(f) . . . [and required] strict compliance with service requirements under Fed. R. Bankr.P. 7004 with regards to these motions in that real property interests are implicated and may be impaired." It concluded that debtors "must be held to the same service of process strictures" when stripping a consensual security interest. *Id.* at 610.

ments of Rule 7004 when specific relief is sought against a creditor).[24]

■ Thus, to meet the requirements of the Rules and comply with considerations of due process, a Rule 3012 motion (either within or without a plan) must be served on the affected creditors in accord with Rule 7004. The debtor must file an appropriate certificate of service reflecting compliance with Rule 7004. Simply mailing the plan and notice of confirmation under Rule 2002 will not be sufficient, unless the MML contains an address for the affected creditor that complies with the requirements of Rule 7004(b).[25]

■ It is important once again to recognize that Rule 7004–compliant service and notice is required not just for those creditors whose liens are to be stripped off. Such service is also required to strip down a creditor to the value of its lien. This is a very common part of chapter 13 plans. As stated in *King*.

> For the purpose of the application of Section 506, there is no procedural distinction to be drawn between stripping down an undersecured lien to the value of the collateral, and stripping off and "voiding" a wholly unsecured lien. Both depend on the same inquiry into the value of the property and the amount of prior liens and both are routine aspects

of Chapter 13 plans and the confirmation process.

290 B.R. at 648 n. 4. Since the gravamen of the relief sought is the same for both—the valuation of the collateral securing the creditor's claim—the procedure should also be the same. Creditors holding interests which a chapter 13 debtor wishes either to strip down or strip off must be served in compliance with Rule 7004.

■ This Court has, on occasion, refused to confirm a plan where there was inadequate proof of proper service on creditors who must be served in compliance with Rule 7004. Likewise, chapter 13 standing trustees evaluate a debtor's compliance with the Code and Rules, and they object to plan confirmation where the proposed treatment of creditors is procedurally flawed. But, it is important to recognize that the ultimate responsibility of proving that notice was properly given and that relief is warranted, is on the debtor. *See Zimmerman*, 276 B.R. at 603, quoted *supra*.

■ Here the Plan and notice of hearing were properly served on Homecoming's counsel consistent with the Request for Notice/Service, and on Homecoming's registered agent and Idaho account manager consistent with Rule 7004(b)(3). The Court concludes there is no procedural

---

**24.** This Court previously observed:

> When so much of the daily diet of bankruptcy practice is handled by 'notice and hearing' under § 102(1), and on the nonappearance or nonobjection of a party who has been provided an opportunity to appear or object, it is appropriate that both the Court and counsel for the proponent pay heed to the requirements of proper service. As noted in *Ultrasonics, Inc. v. Eisberg (In re Ultrasonics, Inc.)*, 269 B.R. 856, 861–62 (Bankr.D.Idaho 2001), the special and 'comparatively lenient' procedure of service by mail in bankruptcy cases requires parties to strictly comply with Rule 7004, thus pro-

> tecting due process rights while still allowing bankruptcy matters to proceed expeditiously.

*Lancaster*, 03.1 I.B.C.R. at 32, 2003 WL 109205.

**25.** Service on the creditor by regular first class mail is authorized under Rule 7004(b), but it must be properly addressed as provided in Rule 7004(b)(1) through (b)(10). And if an "insured depository institution" is involved, Rule 7004(h) requires service in the contested matter to be by certified mail addressed to an officer of the institution unless one of three exceptions in Rule 7004(h) applies.

infirmity frustrating the Debtors' request under *Zimmer*.

### 5. Effective date of relief

Assuming that entry of an order stripping off a lien is appropriate and that the procedural and substantive preconditions have been met, a further consideration is presented. Courts have debated whether voiding of liens in chapter 13 should occur at the time of confirmation of the plan or at some later point, such as when plan payments to unsecured creditors are completed and the debtor becomes entitled to a discharge. *See, e.g., Sadala*, 294 B.R. at 185 (concluding stripped off lien should be extinguished only at discharge); *Dickey*, 293 B.R. at 364 n. 3 (raising concern that allowing debtor to strip off mortgage before completion of plan payments and discharge "will confer a benefit ... not contemplated by the Bankruptcy Code" and "permits Debtor to enjoy the benefits of Chapter 13 relief without fulfilling his concomitant responsibility to complete payments under the Plan").[26] *Accord Rheaume*, 296 B.R. at 316–20 (addressing a similar issue of "early release" for an undersecured "stripped down" creditor at the time the allowed secured claim is paid); *see also In re Parker*, 285 B.R. 394, 396–99 (Bankr.E.D.Tenn.2002) (addressing early release); *In re Gray*, 285 B.R. 379, 388 (Bankr.N.D.Tex.2002) (allowing lien release prior to discharge); *In re Castro*, 285 B.R. 703, 705–12 (Bankr.D.Ariz.2002).[27]

 There are arguments that support making the stripping and voiding of the unsecured mortgage, absent circumstances

sufficiently identified and explained, effective at the time plan payments are completed and the debtor becomes entitled to entry of discharge. Here, however, ¶ 4(b)(1) of the Debtors' Plan advised Homecoming of the proposal "to strip [the deed of trust] from the residence and render [Homecoming] unsecured *upon confirmation of the plan.*" Doc. No. 24 at 5 (emphasis added). Homecoming's counsel, who had specifically requested notice, was served with the Plan and with the Debtors' brief. In addition to failing to object to the lien stripping, Homecoming did not object to the time such relief would be effective.

The Court concludes that it will confirm the Plan and grant the related motions, and it will strip off Homecoming's deed of trust as of the date of plan confirmation. In doing so, the Court does not limit its ability to consider the timing question in subsequent cases.

### CONCLUSION

In summary, a chapter 13 debtor may, in his plan or in a separate (and usually preconfirmation) motion, seek to strip off a creditor's wholly unsecured lien through a valuation process under § 506(a) and Rules 3012 and 9014. An adversary proceeding is not required by Rule 7001(2) unless that debtor otherwise contests the validity, extent or priority of the creditor's lien. However, the nature and substance of the request to so treat the creditor's claim and lien must be clearly and conspicuously identified and explained in the plan or motion. Service of the motion, or of the

---

26. Though *Dickey* confirmed a plan with such a provision, that court concluded that it would thereafter "consider on a case by case basis the question of whether a lien made avoided through a confirmed plan can be satisfied prior to the debtor receiving a discharge." 293 B.R. at 364.

27. One argument regularly advanced in favor of a later effective date for lien stripping or release is that, upon dismissal of a case, § 349(b)(1)(C) "reinstates ... any lien avoided under section 506(d)," and that dismissal remains a possibility until the plan is completed.

plan if the motion is subjoined, must be made on that creditor as required by Rule 7004. Assuming a proponent can show that these prerequisites are met, an order granting the motion may be entered, either within a confirmation order or separately.

In the instant case, the Debtors have used an acceptable procedure, have met the requirements of adequate notice and service, and have sufficiently alleged a right to relief. The valuation motion will be granted and Homecoming's security interest stripped off the Residence.

The order of confirmation submitted by the Debtors and endorsed by the Trustee will be entered.