**In re Leo Stephen ROBERT and Nancy Jean Robert, Debtors.**

**No. 03–18304.**

United States Bankruptcy Court, N.D. New York.

Aug. 30, 2004.

Barbara Whipple, Orlando & Barbaruolo, PLLC, Albany, NY, for Debtors.

Brian B. Kumiega, Steven J. Baum, P.C., Amherst, NY, for Secured Creditor.

Mark W. Swimelar, Syracuse, NY, Chapter 13 Standing Trustee.

## Memorandum–Decision and Order

ROBERT E. LITTLEFIELD, JR., Bankruptcy Judge.

Upon motion by Leo and Nancy Robert (the "Debtors"), the court is asked to decide whether, under Section 1322(b)(2) of the United States Bankruptcy Code (11 U.S.C. §§ 101—1330) ("Code"), a Chapter 13 debtor can strip off a wholly unsecured lien on his residential property without instituting an adversary proceeding. For the reasons stated below, the court concludes that a *Pond*[1] determination may be sought through regular motion practice rather than through an adversary proceeding.

### Jurisdiction

The court has jurisdiction over this case. 28 U.S.C. §§ 157(a), (b)(1), and 1334. This

---

1. *In re Pond*, 252 F.3d 122 (2nd Cir.2001). The Second Circuit's holding in *Pond* is dis- cussed *infra*. *See* Discussion Part I, at 548.

matter is a core proceeding. 28 U.S.C. §§ 157(b)(2)(K) and (L).

**Factual and Procedural Background**

On December 18, 2003, the Debtors filed a voluntary joint petition, together with the requisite schedules and statements, seeking relief under Chapter 13 of the Code ("Petition"). They simultaneously filed a proposed Chapter 13 plan ("Plan").

On Schedule A (Real Property), the Debtors list their residence located at 449 Fourth Street in Troy, New York (the "Property"). They indicate that the Property has a current fair market value of $85,900 and that it is subject to two mortgages which secure obligations totaling $124,854.30. On Schedule D (Creditors Holding Secured Claims), the Debtors list ABN AMRO Mortgage Group, Inc. ("ABN") as the holder of a first mortgage with a claim in the amount of $87,854.83. Additionally, the Debtors list Homecomings Financial ("Homecomings") as the holder of a second mortgage with a claim in the amount of $37,000. In relation to Homecomings' claim, the Debtors note on Schedule D that the entire portion is unsecured "based upon the existence of [s]uperior [l]iens." Accordingly, the Plan specifically provides that "[t]he second mortgage owed to Homecoming Financial shall be stripped and paid pro rata with the remaining unsecured creditors pursuant to the *Pond* decision."

Homecomings was included on the Debtors' mailing matrix and the following address was provided:

Homecomings Financial

P.O. Box 78426

Phoenix, AZ 85062–8426

All creditors, including Homecomings, were served with the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, and Deadlines, issued by the clerk's office on December 19, 2003 (the "Notice"). (Dkt. No. 3.) The Notice alerted creditors that the meeting of creditors would be held on January 28, 2004, the deadline to file a proof of claim was April 27, 2004, and that the confirmation hearing would be held on February 12, 2004. It further indicated that any objection to confirmation must be filed and properly served no later than 5 business days prior to the confirmation hearing date and that any party objecting must appear at the confirmation hearing.

On March 31, 2004, counsel for Homecomings, Brian B. Kumiega, filed a Notice of Appearance on behalf of "HOMECOMINGS–FIDELITY, Secured Creditor." (Dkt. No. 13.) Homecomings has not filed an objection to confirmation or a proof of claim in this case.

The Trustee filed an objection to confirmation on February 5, 2004.[2] The objection states in relevant part:

Debtor(s) seek to avoid the lien of the following Creditor without an Order pursuant to § 506/522(f) obtained by consent or by an adversary proceeding under Bankruptcy Rule 7001:

HOMECOMING FINANCIAL[.]

(Trustee's Objection to Confirmation of Chapter 13 Plan.)

Following the Trustee's objection, on May 28, 2004, the Debtors filed the instant motion seeking an order automatically stripping off Homecomings' lien upon the entry of their discharge and immediately compelling Homecomings to provide the Trustee with a satisfaction of lien to be

---

**2.** The objection to confirmation was filed by Chapter 13 Trustee Andrea E. Celli, Esq., who has recused herself from the case because of a conflict of interest. On April 7, 2004, Mark E. Swimelar, Esq. was appointed as the Suc-

cessor Chapter 13 Trustee in this case. The objection to confirmation has been carried with the pending motion, since the merits of the objection are unaffected by the substitution.

held in escrow pending their successful completion of the Plan. The Debtors did not affirmatively challenge the validity, priority, and/or extent of Homecomings' lien, but instead alleged that there was insufficient equity to reach beyond the first mortgage. In support of their motion, the Debtors submitted a Pricing Recommendation prepared by Diane Dobrowolski, a realtor with Coldwell Banker Prime Properties, Inc. (Exhibit B attached to the Application in Supp.) Ms. Dobrowolski, using the comparable sales approach, arrived at a "recommended list price" of $85,900 and an "average sale price" of $74,972. *Id.*

The Debtors submitted affidavits of service attesting to service of the motion upon Homecomings' President at the following physical locations:

Homecomings Financial
9275 Sky Park Court, 3rd Floor
San Diego, CA 92123
ATTN: President
Homecomings Financial
2711 North Haskell Ave., Suite 900
Dallas, TX 75204
ATTN: President

(Dkt. No. 14.) The Debtors also served the motion upon Mr. Kumiega. (Dkt. No. 17.) The motion was returnable on the court's regular motion calendar on June 23, 2004. Homecomings did not respond to the motion or appear at the hearing. Nonetheless, the court took the matter under advisement to address the Trustee's objection and to evaluate the procedure utilized by the Debtors in this case.

## Discussion

### I. Overview

Preliminarily, it is important to note that the Second Circuit has held that a Chapter 13 debtor may modify the rights of a wholly unsecured mortgagee under Code § 1322(b)(2). *See In re Pond,* 252 F.3d at 126 (holding that a wholly unsecured mortgage lien may be stripped off in a Chapter 13 proceeding notwithstanding the antimodification exception of § 1322(b)(2)).[3] Therefore, neither Homecomings nor the Trustee contest the Debtors' substantive right to avoid Homecomings' lien, assuming the same is in fact wholly unsecured.

Instead the Trustee asserts, on very narrow procedural grounds, that Homecomings' lien cannot be avoided apart from the protections afforded by an adversary proceeding. Prior to the Debtors' motion, an adversary proceeding was the sole method utilized by debtors and practitioners appearing before this court to extinguish a junior lienholder's wholly unsecured mortgage lien. The Debtors' motion however squarely places before the court the question of whether an adversary proceeding is necessary to effect a strip off.

### II. Motion Versus Adversary Proceeding

The issue before the court brings into question the relationship between the Code and the Rules; is strip off part and parcel of the secured claim determination and valuation process under Code § 506(a), which may be addressed by motion under Rule 3012, or does it constitute "a proceeding to determine the validity, priority, or extent of a lien," FED. R. BANR. P. 7001(2), required to be made in compliance with the Rules governing adversary proceedings?

Code § 506 provides in relevant part:

> than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .

---

3. Code § 1322(b)(2) provides in relevant part: [T]he [Chapter 13] plan may—modify the rights of holders of secured claims, other

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void

. . . .

11 U.S.C. § 506. Under Code § 506(a), the court may determine the value of collateral, which secures an allowed claim, to ascertain what portion of the claim is secured and what portion is unsecured. To the extent the lien exceeds the amount of the allowed secured claim, subsection (d) provides that the lien is void.

Rule 3012 specifically permits Code § 506(a) collateral valuations to be requested on motion provided notice and opportunity for hearing is given to the affected party. FED. R. BANKR. P. 3012.[4] Although the Rule does not specifically address whether strip off may be accomplished by motion practice alone, the Advisory Committee Notes provide some guidance:

An adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. *That proceeding is relevant to the basis of the lien itself* while valuation under Rule 3012 would be for the purposes indicated above [e.g., to determine the issue of adequate protection, impairment, or treatment of the claim in a plan.]

FED. R. BANKR. P. 3012 Advisory Committee Notes (emphasis added). Thus, it appears that no adversary proceeding is needed simply to value and declare void a totally unsecured claim. The majority of courts therefore hold that "the appropriate procedure for lien avoidance under Section 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Bankruptcy Rule 3012." *In re Sadala,* 294 B.R. 180, at 183 (Bankr.M.D.Fla.2003) (collecting cases); *see also, In re Millspaugh,* 302 B.R. 90 (Bankr.Idaho 2003); *In re Fisher,* 289 B.R. 544 (Bankr.W.D.N.Y. 2003) (court allows *Pond* proceedings to be prosecuted by motion in the absence of a specific objection by the mortgage holder that the proceeding be converted to an adversary proceeding); *but see, e.g., In re Kressler,* 252 B.R. 632 (Bankr.E.D.Pa. 2000) (espousing the minority view that an adversary proceeding is required); *In re McMillan,* 251 B.R. 484 (Bankr.E.D.Mich. 2000) (same). "Once the value of the secured claim is determined, the attendant lien is stripped off automatically under Section 506(d)." *In re Sadala,* 294 B.R. at 183.

■ In contrast, an adversary proceeding is required under Rule 7001(2) when the dispute between the parties raises an issue as to the validity, priority, or extent of the underlying lien. Pursuant to Part VII of the Rules, adversary proceedings are subject to a much more comprehensive set of procedures than are contested matters. Under the majority view, the validity, priority, and extent of the lien are not implicated when a debtor seeks to declare a lien void on the basis that the collateral

---

4. Rule 3012 provides:
    The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

is valued at zero. The majority reaches this conclusion by reasoning that the terms "validity," "priority," and "scope" refer to enforceability (i.e., the existence or legitimacy of the lien itself), superiority in rank or position, and identification of the property encompassed by or subject to the lien, not to the extent to which the claims of the mortgagee are secured. *See In re Millspaugh,* 302 B.R. at 96–97.

■ Because the court finds the majority view to be most persuasive, the court adopts this position and holds that a debtor moving to value collateral for purposes of stripping off an allegedly wholly unsecured lien under Code § 506 may do so by motion, unless the debtor seeks to otherwise contest the validity, extent, or priority of the lien, as those terms are defined above.[5] If the court values the security interest at zero, the lien shall be stripped off upon completion of the Chapter 13 plan and issuance of discharge pursuant to Code § 506(d) without further litigation. The debtor's motion and proposed order should provide, however, that the creditor be required to deliver to the Chapter 13 Trustee a lien release to be held in escrow until discharge is issued.

### III. Due Process and Service Requirements for Valuation and Strip Off

■ Finally, the court must address the due process concerns implicated when a property interest is taken from a creditor—as a strip off does. *See Id.* at 99 (collecting cases). While Rule 3012 does not expressly incorporate Rule 9014, "the sort of relief at issue when secured claims are valued, including stripping those creditors' liens down or off, constitutes a contested matter." *Id.* at 101 (citations omitted).

In a contested matter, the creditor receives a motion. Typically, no filing fee is required. Because many contested motions are not opposed, the responding party is given an opportunity to file a response or objection within a certain period of time. If a response is filed, the court will set a hearing. Often, the creditor will not dispute the relief requested in the motion, files no response, and the motion is granted upon notice but without the need for any hearing after the response period passes. The process provides due process in a streamlined and efficient matter.

*In re Sadala,* 294 B.R. at 183–4. The fact that contested matters may be advanced by motion does not mean that procedural safeguards are lacking. Rather, a debtor attempting to strip off a lien must effect service upon the mortgagee in compliance with Rule 7004. Additionally, in adherence to fundamental principles of due process, the debtor must, in its related motion, make clear and conspicuous the proposed treatment of the creditor's claim and the factual basis for such treatment.

### IV. Homecomings' Lien

In the present case, the Debtors did not contest the validity, priority, or extent of the lien; therefore, motion practice is appropriate. The Petition clearly identifies the Property, it identifies ABN as the primary mortgagee and Homecomings as the junior mortgagee, and it sets forth the amount of each claim. The Debtors' motion and Plan expressly propose to strip off Homecomings' mortgage on the Property on the basis that there is no remaining equity since the first mortgage exceeds the Property's value. Further, the Debtors'

---

**5.** The debtor must, of course, explicitly state within the motion that the validity, extent, or priority of the lien are not at issue.

request for relief is supported by an uncontested appraisal from a reputable real estate company.

Therefore, the court finds that the Property has a maximum value of $85,900.[6] The outstanding balance on the ABN mortgage exceeds this value by $2,854.83. Accordingly, the Debtors have met their burden to demonstrate that Homecomings' lien is wholly unsecured. As such, the Homecomings mortgage lien can be avoided under Code § 506 and the decision of the Second Circuit in *Pond.*

### Conclusion

A Chapter 13 debtor may proceed by motion to strip off a creditor's wholly unsecured lien through the valuation process under Code § 506 and Rules 3012 and 9014. An adversary proceeding is not required by Rule 7001(2) unless the debtor otherwise contests the validity, extent, or priority of the mortgagee's lien. However, the debtor must still satisfy the requirements of due process as provided herein.

Here, the Debtors have met the requirements of adequate notice and service, and have sufficiently supported their claim for relief. On that basis, the Debtors' motion is granted and Homecomings' lien shall be stripped off and extinguished upon the completion of Plan payments to unsecured creditors and the Debtors' entitlement to entry of discharge.

For the reasons stated above,

IT IS HEREBY ORDERED that Homecomings shall provide to the Chapter 13 Trustee, within 30 days of entry of this Memorandum, Decision and Order, a satisfaction of lien to be held in escrow until

the Debtors have completed their Plan and become entitled to discharge.

IT IS SO ORDERED.

---

**6.** This finding is supported by Homecomings' lack of objection to the Debtors' valuation. The court can only assume from Homecomings silence and its failure to submit an independent appraisal that it acquiesced in the value arrived at by Ms. Dobrowolski.